# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

| | |
|---|---|
| A.H., by and through her parents and natural guardians, James Hester and Darlene Hester; JAMES HESTER, individually; DARLENE HESTER, individually; E.R., by and through her parents and natural guardians, Chad Ross and Angela Ross; CHAD ROSS, individually; ANGELA ROSS, individually; A.F., by and through her parents and natural guardians, Daniel Foley and Juliane Foley; DANIEL FOLEY, individually; JULIANE FOLEY, individually; C.R., by and through her parents and natural guardians, Gilles Rainville and Elke Rainville; GILLES RAINVILLE, individually; ELKE RAINVILLE, individually; and the ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT, <br><br>Plaintiffs-Appellants, <br><br>v. <br><br>DANIEL M. FRENCH, in his official capacity as Secretary of the Vermont Agency of Education; MICHAEL CLARK, in his official capacity as Grand Isle Supervisory Union Superintendent; the SOUTH HERO BOARD OF SCHOOL DIRECTORS; the CHAMPLAIN ISLAND UNIFIED SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS; JAMES TAGER, in his official capacity as Franklin West | No. 21-87 |

| | |
|---|---|
| Supervisory Union Superintendent; | ) |
| and the GEORGIA BOARD OF | ) |
| SCHOOL DIRECTORS, | ) |
| | ) |
| Defendants-Appellees. | ) |

**APPELLEES SCHOOL DEFENDANTS' OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL UNDER FED. R. APP. P. 8**

NOW COME Defendants Michael Clark, in his official capacity as Grand Isle Supervisory Union Superintendent; the South Hero Board of School Directors; the Champlain Islands Unified Union School District Board of School Directors; James Tager, in his official capacity as Franklin West Supervisory Union Superintendent; and the Georgia Board of School Directors (hereinafter referred to collectively as "the School Defendants"), by and through their attorneys, McNeil, Leddy & Sheahan, P.C., and hereby respectfully submit this Opposition to Appellants' Emergency Motion for Injunction Pending Appeal, dated January 15, 2021. For the reasons more fully stated below, Appellant's request for an injunction pending appeal should be denied.

It is unclear exactly what Appellants are seeking from this Court, in the first instance, with the instant Motion. In their Motion Information Statement, they frame their requested relief as follows: "Appellants request that this Court order the School Defendants and those acting with them to

2

stop unconstitutionally excluding Appellants from Vermont's Town Tuition Program, 16 V.S.A. § 822, in violation of their First Amendment religious free exercise rights while appeal is pending." This they have already obtained, notwithstanding their protestations to the contrary.

The District Court granted, in relevant part, Appellants' request for a preliminary injunction, stated in relevant part thusly:

> 1. During the pendency of this litigation and until a trial on the merits, unless otherwise ordered by the court, the School Defendants are hereby ENJOINED from denying Plaintiffs' applications for Town Tuition Program reimbursement solely on the basis of RMHS's [Rice Memorial High School's] religious status.
>
> 2. This injunction binds the School Defendants as well as their officers, agents, servants, employees, and attorneys. . . .

*A.H. v. French,* 2021 WL 62301, *13 (D. Vt. 2021) ("*A.H. I*"). The School Defendants have not cross-appealed this preliminary injunction; they have no intention of doing so; and they fully intend to obey it to the letter as written. Thus, Appellants' Motion appears to be moot from the outset.

However, it is apparent that Appellants now seek relief that goes far beyond that described in their Motion Information Statement. "Appellants ask this Court for emergency relief *because the district court declined to stop the School Defendants' religious discrimination*." Appellants' Motion at 2 (emphasis added). That is untrue, as demonstrated above. Yet they

3

persist: "Ironically, after the injunction, the School Defendants *continue to exclude Appellants* from the [Town Tuition] Program *because they lack guidance* from [Daniel M.] French and his Agency [of Education]." *Id.* at 9 n.2 (emphasis added). This is also untrue, in at least two respects: first, the School Defendants do not "continue to exclude Appellants from the Program" for the simple reason that the rapidity of events has not given them enough time to act advisedly one way or the other; and second, as Appellants know full well, the Vermont Agency of Education ("AOE") has recently issued guidance to school districts on this very subject. *See id.* at 12 n.4 (citing AOE, *Best Practices for Districts That Pay Tuition to Approved Independent Schools,* January 14, 2021, available at https://education.vermont.gov/sites/aoe/files/documents/edu-non-mandatory-guidance-tuition-payment-independent-schools.pdf, Exhibit A).

What Appellants truly seek with this Motion is an injunction forcing the School Defendants to cut checks ***immediately***, without first taking the necessary time to reconsider their initial denials in light of either the District Court's decision or AOE guidance. *See* App'x 378. It should be noted that the District Court issued its preliminary injunction on January 7, 2021; AOE issued its guidance on January 14, 2021, a week later; and Appellants filed this Motion on January 15, 2021, the very next day. School boards in

4

Vermont do not meet every day or every week; it takes time—particularly during the winter and in the midst of a global pandemic—to schedule meetings even when issues must be considered and decided expeditiously.

As the District Court recognized in denying in part Appellants' motion for a preliminary injunction:

> The scope of available injunctive relief, however, remains limited. This court cannot simply order the School Defendants to honor Plaintiffs' RMHS tuition requests. To do so would be to ignore ample evidence that at least some of the courses offered by RMHS consists of religious education. Nor can the court accept Plaintiffs' invitation to order that all tuition reimbursements be paid to them. Unlike in *Espinoza* [*v. Montana Dep't of Revenue,* — U.S. —, 140 S. Ct. 2246, 2254 (2020)], payments under the Town Tuition Program are not funds that make their "way to religious schools only as a result of [parents] independently choosing to spend their [tuition] at such schools." Instead, the Town Tuition Program grants only a sending school board decision-making authority. As the Vermont Supreme Court has observed [in *Chittenden Town School District v. Department of Education,* 169 Vt. 310, 343 (1999)]:
>
>> [T]he United States Supreme Court may well decide that the intervention of unfettered parental choice between the public funding source and the educational provider will eliminate any First Amendment objection to the flow of public money to sectarian education. We cannot conclude, however, that parental choice has the same effect with respect to Article 3 [of the Vermont Constitution]. If choice is involved in the Article 3 equation, *it is the choice of those who are being required to support the religious education*, not the choice of the beneficiaries of the funding.

5

> Parental choice therefore does not obviate Compelled Support Clause concerns.
>
> The court would also overstep its authority if it fashioned "appropriate safeguards" on behalf of the School Defendants. It agrees with Plaintiffs that the court "should not . . . try to do Defendants' job for them."
>
> Because a preliminary injunction is an extraordinary remedy, the court must narrowly tailor the relief granted to the harm likely to occur. In this case, that means the court must order the School Defendants to refrain from denying Plaintiffs' tuition reimbursement requests solely because of RMHS's religious affiliation, but it must tread no further in determining how the decision should be made.

*A.H. I,* 2021 WL 62301 at *12-*13 (emphasis in original; citations omitted). The School Defendants respectfully request that this Court keep these issues in mind when ruling on the instant Motion and allow them to do their job both advisedly and as expeditiously as the circumstances allow.

## ARGUMENT

### I. APPELLANTS FAIL TO FULFILL THE PROCEDURAL REQUIREMENTS PROVIDED BY RULE 8

"A stay [or injunction] pending appeal is governed by Fed. R. Civ. Proc. 62(c) and Fed. R. App. Proc. 8(a)." *United States v. Paccione,* 914 F. Supp. 1037, 1039 (S.D.N.Y. 1996). "Under Rule 8(a) . . . an application for an injunction or a stay pending appeal must ordinarily be sought in the first instance in the District Court." *Marshall v. Berwick Forge & Fabricating*

6

*Co.,* 474 F. Supp. 104, 107-108 (M.D. Pa. 1979). "That rule requires initial resort to the district court precisely because that 'court . . . is best and most conveniently able to exercise the nice discretion needed to determine th[e] balance of convenience' that must be considered in deciding whether to grant a stay [or injunction] pending appeal." *Chevron Corp. v. Donziger,* 37 F. Supp. 3d 650, 651 (S.D.N.Y. 2014) (quoting *Cumberland Telephone & Telegraph Co. v. Louisiana Public Service Comm'n,* 260 U.S. 212, 219 (1922)). "That is so because the district court 'is the one which has considered the case on its merits and, therefore, is familiar with the record,' and it is especially so where, as here, the record is 'very voluminous.'" *Id.* (quoting *Cumberland,* 260 U.S. at 219). "'[I]t is obviously desirable that he [the movant] shall first apply to the trial judge, who necessarily knows more of the case than the circuit court of appeals can learn, certainly while the record remains in the district court, as it almost always does.'" *Id.* (quoting *United States v. Hansell,* 109 F.2d 613, 614 (2d Cir. 1940)).

"Under Rule 8," a party "must either 'move first in the district court' for stay [or injunctive] relief or 'show that moving first in the district court would be impracticable.'" *Securities & Exchange Comm'n v. Dunlap,* 253 F.3d 768, 774 (4th Cir. 2001) (quoting rule). "However," Appellants have

"not pursued relief in the district court by means of [an injunction] pending appeal. This constitutes an omission we cannot properly ignore." *Id.*

Appellants' only attempt to explain bypassing the District Court is their *ipse dixit* assertion that "it was futile for Appellants to have sought relief there first . . . [b]ecause the district court declined to give the Appellants the relief requested in their preliminary injunction motion." Appellants' Motion at 2. But *ipse dixit* assertions are insufficient. "No showing of impracticability of bringing such a motion in the district court was offered in briefs," and thus Appellants have "clearly made no effort to follow proper procedure in their motion. . . ." *Hirschfield v. Board of Elections in City of New York,* 984 F.2d 35, 38 (2d Cir. 1993).

In *Chemical Weapons Working Group (CWWG) v. Department of the Army,* 101 F.3d 1360 (10th Cir. 1996), the Tenth Circuit ruled:

> *The futility theory, however, is inapplicable in this case.* A careful review of appellants' motion for stay reveals that *relief is sought predominantly on the basis of new evidence concerning events which occurred after the district court denied the motion for a preliminary injunction. This evidence has not yet been considered by the district court. It does not necessarily follow from the refusal to grant a preliminary injunction that the district court would also refuse injunctive relief pending appeal.* This is particularly so when the relief sought pending appeal is premised primarily on new evidence which the district court has not yet had a chance to consider. *We will not assume that the district court would not properly consider the new evidence if a motion for stay or other appropriate motion were presented to it in the first instance.*

8

*Id.* at 1362 (emphasis added; citations omitted).

Here, such "new evidence" consists of the AOE guidelines mentioned in Appellants' Motion and attached hereto, as well as the "Emails between Plaintiffs' and School Defendants' Counsel." App'x 378-381. Specifically:

<u>Appellants' Counsel</u>: I am writing to confirm that *the school defendants are not immediately issuing tuition payments to our clients.*

<u>Appellees' Counsel</u>: That is correct. *The School Defendants require time* to digest the best practices memo issued by the AOE today *before making a determination.*

App'x 378 (emphasis added). Simply put, the District Court is in the best position to determine whether this exchange evidences a continued refusal (as Appellants erroneously contend) or a sincere effort (as Appellees maintain) to obey the District Court's preliminary injunction. The District Court should not have been "bypassed" here because "[i]t does not follow from the refusal to grant a preliminary injunction pending a trial in the court below that the district court would refuse injunctive relief pending an appeal." *Bayless v. Martine,* 430 F.2d 873, 879 n.4 (5th Cir. 1970).

In sum, Appellants have "plainly failed to satisfy the requirements of Rule 8." *Dunlap,* 253 F.3d at 774. "[W]illful disregard of Rule 8" should end the matter without needing "to consider whether this Court's standard"

9

for such motions "has been met." *Hirshfield,* 984 F.2d at 39-40; *see United States ex rel. Barnwell v. Rundle,* 461 F.2d 768, 769 (3d Cir. 1972) (same).

### II. APPELLANTS FAIL TO MAKE A STRONG SHOWING THAT THEIR RIGHTS ARE INDISPUTABLY CLEAR OR THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS

A stay or injunction pending appeal "is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Brady v. National Football League,* 779 F. Supp. 2d 1043, 1046 (D. Minn. 2011) (internal quotation marks omitted); *see Nken v. Holder,* 556 U.S. 418, 427 (2009) (same). This is so "even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." *Scripps-Howard Radio v. Federal Communications Comm'n,* 316 U.S. 4, 10-11 (1942) (citations and internal quotation marks omitted).

"The burden in such actions is on the party seeking the stay" or the injunction pending appeal. *Northwestern National Insurance Co. v. Insco, Ltd.,* 866 F. Supp. 2d 214, 217 (S.D.N.Y. 2011); *see DV Diamond Club of Flint, LLC v. Small Business Administration,* 960 F.3d 743, 746 (6th Cir. 2020) (movant bears burden of showing entitlement to relief pending appeal). This is "a difficult burden" to bear. *United States v. Private*

10

*Sanitation Industry Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1984 (2d Cir. 1995). The U.S. Supreme Court has identified four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken,* 556 U.S. at 434 (internal quotation marks omitted). "There is substantial overlap between these and the factors governing preliminary injunctions, not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Id.* (citations omitted). "The first two factors of the traditional standard are the most critical." *Id.* Thus, the School Defendants will focus thereon.

As for the first factor, there is a notable difference between stays and injunctions pending appeal. "The motions at issue here seek a remedy still more drastic than a stay: an injunction issued in the first instance by an appellate court." *Agudath Israel of America v. Cuomo,* 980 F.3d 222, 226 (2d Cir. 2020). "Unlike a stay . . . a request for an injunction pending appeal does not simply suspend judicial alteration of the *status quo* but *grants judicial intervention that has been withheld by lower courts*." *Hobby Lobby*

11

*Stores, Inc. v. Sebelius,* 568 U.S. 1401, 1403 (2012) (Sotomayor, J.) (emphasis added; internal quotation marks omitted).

Therefore, a request for an injunction pending appeal "demands a significantly higher justification than that required for a stay." *Lux v. Rodrigues,* 561 U.S. 1306, 1307 (2010) (Roberts, C.J.) (internal quotation marks omitted). Applicants must make "'a strong showing' that their claim is likely to prevail." *Agudath Israel of America v. Cuomo,* — F.3d —, 2020 WL 7691715, *1 (2d Cir. 2020) (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo,* — U.S. —, 141 S. Ct. 63, 66 (2020)). "Such an injunction is appropriate only if the legal rights at issue are indisputably clear." *Brown v. Gilmore,* 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J.) (internal quotation marks omitted); *see Wisconsin Right to Life, Inc. v. Federal Election Comm'n,* 542 U.S. 1305, 1306 (2004) (applying "indisputably clear" standard). As one circuit court put it:

> Unless an appellant can demonstrate to the court on such an emergency motion as this that there is *great likelihood, approaching near certainty, that he will prevail when his case finally comes to be heard on the merits,* he does not meet the standard which all courts recognize must be reached to warrant the entering of an emergency order of this kind.

*Greene v. Fair,* 314 F.2d 200, 202 (5th Cir. 1963) (emphasis added). Moreover, in a related case in which the School Defendants are not named parties, this Court recently determined that "Appellants' requested injunction

12

[is] mandatory in nature and subject to this higher standard." *A.H. v. French*, — F.3d —, 2021 WL 137340, \*6 (2d Cir. 2021) ("*A.H. II*").

"Whatever else may be said about the issues and equities in this case, the rights of the applicants are not 'indisputably clear.'" *Brown,* 533 U.S. at 1303. At the outset, Appellants appear to be trying to appeal on grounds that they specifically waived during oral argument before the District Court. *See* Hearing Transcript, Dec. 14, 2020, at 8-10, 14, 70-71 (Exhibit B). "'The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 124 n.29 (2d Cir. 2005) (quoting *United States v. Braunig,* 553 F.2d 777, 780 (2d Cir. 1977)). "We recognize that this court has discretion to consider arguments waived below because our waiver doctrine is entirely prudential." *In re Nortel Networks Corp. Securities Litigation,* 539 F.3d 129, 133 (2d Cir. 2008). But this Court elaborated:

> Although we may exercise discretion to consider waived arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below.

*Id.* (internal quotation marks omitted). Such is the case here.

Appellants pepper their Motion with the following arguments for why they believe the Vermont Constitution's Compelled Support Clause, the Vermont Supreme Court's *Chittenden Town* decision, and any attempt to balance the competing constitutional concerns at issue, are unconstitutional:

> The Compelled Support Clause in Vermont's state constitution provides the legal basis for the State's decades-long religious discrimination in the Program. . . . If applying *Chittenden*'s "adequate safeguards" means that religious schools or their students must be excluded from a neutral public benefit or have their benefits diminished, that is unconstitutional. . . . [T]he district court erroneously determined that even after *Espinoza,* discrimination against religious schools and their students was permissible if the government was preventing "religious uses" of public funds. . . . The court's order erroneously allows the School Defendants to continue to unconstitutionally exclude the [Appellants] from the Program out of deference to an obsolete Vermont Supreme Court decision. . . . However, it erred when it determined that, after *Espinoza,* Vermont and the School Defendants are still allowed to discriminate against Appellants to prevent the "religious use" of a neutral public benefit. . . . Thus, an adequate safeguards framework that featured use-based restrictions to avoid funding religious education in high schools would violate the Free Exercise Clause.

Appellants' Motion at 3, 3 n.3, 11-12, 15-16 (citations and internal quotation marks omitted).

Unfortunately for Appellants, all of the above-quoted arguments have been waived below, as the District Court ruled:

> In their pending motion, Plaintiffs ask the court to order Defendants to comply with applicable law and to refrain from depriving Plaintiffs of tuition reimbursement payments solely because of RMHS's religious affiliation. *They do not ask the*

14

> *court to strike down the Compelled Support Clause* or invalidate the Town Tuition Program. *The court agrees with the parties that the Compelled Support Clause,* as interpreted by *Chittenden Town*, *does not conflict with the Free Exercise Clause,* as interpreted by *Espinoza v. Montana Dep't of Revenue,* 140 S. Ct. 2246 (2020). Accordingly, at issue is only whether injunctive relief is warranted and whether it can be narrowly tailored to prevent an ongoing violation of Plaintiffs' Free Exercise rights.

*A.H. I,* 2020 WL 62301 *7 (emphasis added). Thus, to present such arguments on appeal, they must convince a panel of this Court that allowing them to do so is "necessary to avoid a manifest injustice." *Nortel Networks,* 539 F.3d at 133. Obtaining such relief is far from certain. *See Marshall,* 474 F. Supp. at 110 (unlikely to prevail on issue not raised below).

But even if this Court were to allow Appellants to evade the effects of their waiver below, they cannot show that "the legal rights at issue are indisputably clear." *Brown,* 533 U.S. at 1303. Appellants base this Motion on the notion that the Vermont Supreme Court (in deciding *Chittenden Town*), the District Court (in denying in part their motion below), and the First Circuit (in deciding *Carson v. Makin,* 979 F.3d 21 (1st Cir. 2020)), have all drastically erred. This shows the height of the hurdles that Appellants must overcome in making the required strong showing. *See Lux,* 561 U.S. at 1308 (appellate courts "appear to be reaching divergent results in this area"); *Wisconsin Right to Life,* 542 U.S. at 1306 (district court rejected

15

request for preliminary injunction); *Brown,* 533 U.S. at 1304 (lower court's finding "casts some doubt" on First Amendment claim); *Marshall,* 474 F. Supp. at 109 (difficult to predict likelihood of success on appeal when "dealing with an emerging area of law"). In sum, "[w]hatever the ultimate merits of the applicants' claims, their entitlement to relief is not 'indisputably clear.'" *Hobby Lobby,* 568 U.S. at 1043 (quoting *Lux*).

### III. APPELLANTS HAVE FAILED TO SHOW THAT THEY WILL SUFFER IRREPARABLE HARM

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.,* 719 F.2d 42, 45 (2d Cir. 1983) (internal quotation marks omitted). "[A] showing of irreparable harm is fundamental to any grant of injunctive relief." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 37 n.6 (2d Cir. 2010). To show irreparable harm, the movant must establish an injury that is not remote or speculative but "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., LLC v. Labatt Brewing Co.,* 339 F.3d 101, 113 (2d Cir. 2003). There is thus a "general proposition

that irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 38 (2d Cir. 1995).

Appellants argue that, since they have allegedly "shown they will likely succeed on their constitutional claims, irreparable injury is presumed." Appellants' Motion at 19. On the contrary, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown." *Doninger v. Niehoff,* 527 F.3d 41, 47 (2d Cir. 2008). If a jury finds that Appellants' constitutional rights have been violated here, the measure of damages would be easily quantifiable at trial to be equal to any tuition that should have been paid under the Program. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

In addition, at this early stage of the litigation, claims of financial hardship should be viewed with all due skepticism. A "bare and conclusory affidavit [fails] to demonstrate, by clear and convincing evidence, . . . irreparable injury absent a preliminary injunction. . . ." *Hui v. New Clients, Inc.,* 5 N.Y.S.3d 279, 281 (N.Y. App. Div. 2015) (internal quotation marks omitted). "Plaintiff's statements are conclusory and speculative. . . . [W]ithout any meaningful context or supporting documentation, [it] is insufficient by itself to establish Plaintiff is likely to suffer irreparable

17

injury. . . . The law requires much more." *A.C.T. 898 Products, Inc. v. W.S. Industries, Inc.,* 2016 WL 9088705, *4 (C.D. Cal. 2016).

Regarding irreparable harm, *A.H. II* is distinguishable. In that case, in which a different program was under consideration, this Court ruled that "the AOE's unconstitutional application of the 'publicly funded' requirement *is enduring and, for A.H., permanent.* Absent a preliminary injunction, *A.H. will lose her last opportunity to participate in the program* when she graduates this Spring." *A.H. II,* 2021 WL 137340 at *12 (emphasis added). Here, in contrast, any alleged harm that might have been caused by the School Defendants is neither "enduring" nor "permanent."

A school district is treated like a municipality under Vermont law. *See* 16 V.S.A. § 551. The practice known as reconsideration has long been recognized in Vermont. "A town, like an individual, may change its purposes, and a town may express this change by its vote, and, unless some right in another has been acquired or has vested under its action, no one may complain of the change." *Cox v. Town of Mount Tabor,* 41 Vt. 28, 31 (1868). "Until something has been done under the vote, the town are alone interested in it, and may alter their resolve at their own pleasure." *Stoddard v. Gilman,* 22 Vt. 568, 573 (1850). The School Defendants may and should reconsider their initial denials in accordance with AOE guidance. *See*

18

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, — U.S. —, 138 S. Ct. 1719, 1732 (2018) (party "entitled to a neutral decisionmaker" in administrative proceedings "who would give full and fair consideration" to party's religious beliefs). Thus, if the circumstances warrant, the School Defendants can repair any harm allegedly inflicted upon Appellants.

Finally, Appellants' so-called "emergency" appears to be somewhat manufactured. Unlike in *A.H. II*, there are no third-party schools waiting for full payment of tuition before enrolling Appellants. "The Diocese subsidizes Rice's operating costs and provides tuition assistance to some families who cannot afford to pay the tuition rate." Appellants' Motion at 8. The Diocese is a co-plaintiff along with the individual students and their parents, and all of them are cooperating in this litigation. Appellants do not allege that the Diocese has threatened not to enroll anyone at RMHS if payment of tuition is not made in full by their self-imposed deadline of January 22, 2021. Surely the Diocese can wait a short time to allow the School Defendants to make new assessments under the new AOE guidelines; it would strain credulity to suggest that the Diocese might go bankrupt in the interim.

In sum, and with all respect, this case is in a state of flux, and it would behoove the judiciary and all parties to allow the School Defendants just a little more time to do their jobs without an injunction complicating matters.

## **CONCLUSION**

WHEREFORE, for any and all of the reasons stated above, this Court should deny Appellants' Motion for an Injunction Pending Appeal.

DATED at Burlington, Vermont, this 21st day of January 2021.

                         Respectfully Submitted,

BY: /s/ William F. Ellis\_
     William F. Ellis, Esq.
     A Member of the Firm
     McNeil, Leddy & Sheahan, P.C.
     271 South Union St.
     Burlington, VT 05401
     (802) 863-4531
     wellis@mcneilvt.com

BY: /s/ Kevin J. Coyle\_
     Kevin J. Coyle, Esq.
     McNeil, Leddy & Sheahan, P.C.
     271 South Union St.
     Burlington, VT 05401
     (802) 863-4531
     kcoyle@mcneilvt.com

Attorneys for Defendants Michael Clark, in his official capacity as Grand Isle Supervisory Union Superintendent, the South Hero Board of School Directors, the Champlain Islands Unified Union School District Board of School Directors, James Tager, in his official capacity as Franklin West Supervisory Union Superintendent, and the Georgia Board of School Directors

c:    Thomas E. McCormick, Esq.
      Paul Daniel Schmitt, Esq.
      Ryan J. Tucker, Esq.
      David A. Cortman, Esq.
      Jon T. Alexander, Esq.
      Rachel Smith, Esq.