**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

A.H., by and through her parents and natural guardians, James Hester and Darlene Hester; JAMES HESTER, individually; DARLENE HESTER, individually; E.R., by and through her parents and natural guardians, Chad Ross and Angela Ross; CHAD ROSS, individually; ANGELA ROSS, individually; A.F., by and through her parents and natural guardians, Daniel Foley and Juliane Foley; DANIEL FOLEY, individually; JULIANE FOLEY, individually; C.R., by and through her parents and natural guardians, Gilles Rainville and Elke Rainville; GILLES RAINVILLE, individually; ELKE RAINVILLE, individually; and the ROMAN CATHOLIC DIOCESE OF BURLINGTON, VERMONT,

No. 21-87

     Plaintiffs-Appellants,

 v.

DANIEL M. FRENCH, in his official capacity as Secretary of the Vermont Agency of Education; MICHAEL CLARK, in his official capacity as Grand Isle Supervisory Union Superintendent; the SOUTH HERO BOARD OF SCHOOL DIRECTORS; the CHAMPLAIN ISLAND UNIFIED SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS; JAMES TAGER, in his official capacity as Franklin West Supervisory Union Superintendent; and the GEORGIA BOARD OF SCHOOL DIRECTORS,

     Defendant-Appellee.

**APPELLANTS' REPLY IN SUPPORT OF THEIR
EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL
UNDER FED. R. APP. P. 8**

**Introduction**

Time is of the essence and the potential harm is irreparable. Next week, a new semester starts at Rice Memorial High School. Without relief from this Court, Appellant C.R. will not be able to enroll.

C.R. and her parents hoped to use a neutral public benefit—funds from Vermont's Town Tuition Program—to make her attendance at Rice possible. But C.R.'s school district denied her access because Rice is a religious school. That is unconstitutional and the district court agreed the school district could not deny her benefit for that reason. Yet, because the district court made a legal error, C.R.'s school district *still* refuses to grant C.R. and her parents immediate access to the Program. The district court misapplied *Espinoza v. Montana Department of Revenue* and held that school districts could continue to discriminate based on the proposed "religious use" of the funds.

Without this Court's immediate intervention, three other families will also miss out on another semester in the Program. This ongoing exclusion impacts Appellants' lives. Not only is a student's continued attendance at Rice jeopardized, but parents will be forced to make extraordinary sacrifices to fund their daughters' education—like changing jobs and giving up precious time with their children, including one with special needs. These harms cannot be undone by an after-the-fact damages award or a tuition reimbursement.

1

The School Defendants have had 21 *years* to figure out how to accommodate Rice's participation in the Program, but now they say they need more time. And they still admit that Appellants will be denied the same benefit their neighbors receive because Appellants will use their benefit at a Catholic school. Depriving Appellants of their equal share of a public benefit violates their Free Exercise rights. Appellants request that this Court promptly enjoin the School Defendants' continuing religious discrimination and order that the School Defendants provide immediate access to the Program, including payment of the full tuition funds benefit that Appellants are entitled to receive. *See A.H. v. French* (*French I*), No. 20-1772, 2021 WL 137340, at *13 (2d Cir. Jan. 15, 2021) (ordering similar relief).

## Argument

Appellants asked the district court to end religious discrimination in Vermont's Town Tuition Program. The district court correctly held that the School Defendants engaged in unconstitutional status-based religious discrimination, but it erroneously concluded that the School Defendants could still discriminate based on "religious use." Because of this legal error, it declined to provide Appellants proper relief. As a result, the School Defendants are still excluding Appellants from the Program, withholding their funding, and causing irreparable harm. Appellants need injunctive relief from this Court or they will lose out on another semester in the Program.

## I. Appellants did not need to seek an injunction pending appeal from the district court.

Appellants did not need to seek an injunction pending appeal from the district court because doing so would have been "impracticable." Fed. R. App. P. 8(a)(2)(A)(i). The School Defendants call this an "*ipse dixit*" assertion, but that is incorrect. Appellee's Resp. in Opp. (Resp.) 2, Dk. No. 23. Appellants showed that seeking such relief would have been "futile" because the district court already denied their request for this relief. Appellants' Em. Mot. for Inj. Pending Appeal (Em. Mot.) 3, Dk. No. 9. Indeed, in its order, the district court stated that it would not give the exact relief that Appellants seek from this Court:

> This court cannot simply order the School Defendants to honor Plaintiffs' RMHS tuition requests. To do so would be to ignore ample evidence that at least some of the courses offered by RMHS consists of religious education. Nor can the court accept Plaintiffs' invitation to order that all tuition reimbursements be paid to them.

Opinion at 20, App'x at AA376. Yet, the School Defendants say Appellants nonetheless had to seek the injunction pending appeal below because the Vermont Agency of Education issued "nonmandatory guidance" that constitutes "new evidence" the district court should consider. Resp. 9. Not so.

The "nonmandatory guidance" changed nothing and presented no new facts. It confirmed that the School Defendants must dock Appellants' benefit to account for Rice's religious activities. Agency of

3

Education, *Best Practices for Districts that Pay Tuition to Approved Independent Schools*, at ¶ 5(b)(iii) (January 14, 2021), https://education.vermont.gov/sites/aoe/files/documents/edu-non-mandatory-guidance-tuition-payment-independent-schools.pdf. And as explained below, Appellants told the district court that these penalties and restrictions violate their rights. App'x at AA075. The district court erroneously disagreed, concluding that "[b]ecause *Chittenden Town* prohibits only religious use, it does not conflict with *Espinoza*." Op. at 18, App'x at AA374. The "nonmandatory guidance" simply iterated the legal position that Defendants raised before the district court. *See* AA312 (School Defendants arguing that discrimination based on religious use is permissible); *see also* App'x at AA301 (Secretary French making same argument). In fact, the "nonmandatory guidance" is written in reaction to and reflects the district court's erroneous legal conclusions.

      The "nonmandatory guidance" is not "new evidence" of events that "occurred after the district court denied" the preliminary injunction motion. *Chem. Weapons Working Grp. v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996). The district court committed itself "to a particular resolution" on the facts here. *Id*. So re-requesting the same relief that the district court just denied would have been "futile" or "impracticable." *Id*.

## II. Appellants waived no arguments.

The School Defendants cite the district court's opinion to argue Appellants waived their arguments. Resp. at 13.[1] Appellants have waived nothing. From the beginning, Appellants have argued that the Free Exercise Clause entitles them to "an equal share of the rights, benefits, and privileges enjoyed by other citizens." Pls.' Brief at 12, *see* App'x at AA075 (quoting *Espinoza*, 140 S.Ct. 2246, 2255 (2020)). Appellants argued below that enforcing the *Chittenden* "adequate safeguards" requirement "would allow Defendants to violate [Appellants'] Free Exercise rights." *Id.* at 11–12, App'x at AA074–75.[2] Indeed, Appellants made clear to the district court that the School "Defendants cannot apply the Compelled Support Clause to 'penalize'" Appellants "by cutting families off from otherwise available benefits if they choose a religious private school rather than a secular one." *Id.* And they explicitly told the court: "Rice families must receive the same benefit as their neighbors—a full voucher covering their child's tuition. They should not have their benefit docked or taxed to account for their religious exercise." *Id.* at 12, App'x at AA075. "The Defendants cannot

---

[1] Appellants made clear that they dispute the District Court's erroneous characterization of their position. *See* Em. Mot. at 3, n.1.

[2] Appellants argued below that the School Defendants could both satisfy *Chittenden* and the Free Exercise clause by paying a full tuition benefit directly to the families, but the court rejected that approach. *See* App'x at AA376.

5

demerit families because they dare both exercise their religion and use their neutral public benefit." *Id.* at 13, App'x at AA076. *See also* Pls.' Reply at 6, App'x at AA324 ("Defendants' distinction between 'religious use' and religious status does not help them here because their newfound objection to 'religious use' still violates Plaintiffs' Free Exercise Rights and triggers strict scrutiny.") Appellants' assertions that they are entitled to the full benefit are not new.

### III. This Court should issue injunctive relief.

Appellants meet all the requirements for injunctive relief because they clearly show "that their First Amendment claims are likely to prevail, that denying them relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020). The Court should therefore issue an order requiring the School Defendants to provide immediate access to the Program, including funding for the full tuition benefit.

### A. Appellants will likely prevail on their Free Exercise claims.

The School Defendants suggest this Court should deny injunctive relief because Appellants' rights are not clearly established. They are incorrect. "[T]he Free Exercise Clause protects against laws that penalize religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Espinoza*, 140

S.Ct. at 2255 (quotation omitted). It "protects religious observers against unequal treatment." *Id.* quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012, 2021 (2017). These are long-established principles. *See Everson v. Board of Ed. of Ewing*, 330 U.S. 1, 16 (1947) (States "cannot exclude individual Catholics. . . or the members of any other faith, because of their faith, or lack of it, from receiving the benefits of public welfare legislation").

Importantly here, this court in *French I* also cited *Espinoza* stating that "status-based discrimination remains status based even if one of its goals or effects is preventing religious organizations from putting aid to religious uses." 2021 WL 137340, at *11 citing 140 S. Ct. at 2256.

Appellants are entitled to their equal share of the tuition benefit. As Judge Menashi recently explained, "an 'adequate safeguards' framework that featured use-based restrictions to avoid 'funding religious education' in high schools . . . would violate the Free Exercise Clause.'" *A.H. v. French* (*French I*), No. 20-1772, 2021 WL 137340, at *16 (2d Cir. Jan. 15, 2021); App'x at AA426–27. That is because "a law 'targeting religious conduct for distinctive treatment or advancing legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases.'" *Espinoza*, 140 S. Ct. at 2257 quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993).

7

"The Supreme Court's decision in *Espinoza* explains that a use-based religious exclusion must be justified by 'a historic and substantial state interest' or 'tradition.'" *French I*, 2021 WL 137340, at *16 (Menashi, J., concurring and quoting 140 S. Ct. at 2257-58). "And *Espinoza* clarifies that while there is 'a historic and substantial state interest in not funding the training of clergy,' there is no comparable interest or tradition of states declining to aid religious education broadly." *Id*. (quoting 140 S.Ct. at 2258). In other words, the School Defendants have no compelling interest in treating Appellants worse than their neighbors. *See* App'x at AA076.

Yet, the School Defendants insist on excluding Appellants from the Program and tuition funds because they need time to digest the "nonmandatory guidance." Resp. 19. Meanwhile, Appellants will lose an entire semester in the Program without an order from this Court directing the School Defendants to provide immediate access to the Program and its funding.[3] This Court should stop the unconstitutional discrimination. *See French I*, 2021 WL 137340, at *13 (ordering Vermont to permit Appellant A.H. to participate in state program).

---

[3] The School Defendants suggest that while they take their time interpreting the "nonmandatory guidance" to allow religious schools to receive a morsel of the tuition benefit, the Diocese should foot the bill for C.R. and E.R to attend Rice. But secular schools do not have to shoulder additional burdens. The School Defendants cannot "impose special disabilities on the basis of religious status." *Espinoza,* 140 S. Ct. at 2255.

8

## B. Appellants satisfy the remaining preliminary injunction factors.

"The denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for minimal periods of time." *French I*, 2021 WL 137340, at *12 (quotation omitted).

Because Appellants seek access to a public benefit that could "change the trajectory of [their] li[ves]," the School Defendants' unconstitutional denials have severe, real-world consequences. *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3rd Cir. 2017). C.R. will miss out on an educational experience she will never get back. App'x at AA270. E.R.'s family cannot afford to keep her at Rice without access to the Program, so she could suffer the disruption of changing schools. App'x at AA266. Juliane Foley will continue to miss out on time with her son with special needs. App'x at AA285. Daniel Foley's business opportunities will continue to suffer. App'x at AA285. The Hesters shoulder burdens that their neighbors do not. App'x at AA275. The Diocese will lose invaluable ministry opportunities as Rice loses potential students from Sending Districts. App'x at AA279. And it will have to make sacrifices in other ministries to help provide tuition assistance to students and their families. App'x at AA280. An after-the-fact grant of funds or damages cannot undo these harms. So the School

9

Defendants are wrong to claim that Plaintiffs' harms are not "enduring" or "permanent." Resp. 18.[4]

The Court should also reject the School Defendants' suggestion that the Court view Appellants' "claims of financial hardship . . . with all due skepticism." Resp. 17. If Appellants hardships were not real, C.R. would be at Rice right now. Appellants' claims in their verified complaint are bolstered by sworn declarations. "[B]ecause [Appellants'] complaint is verified, the district court can treat its detailed factual allegations as evidence." *New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020).

Given the significant hardships Appellants face, the balance of equities favors them. While Appellants continue to miss out on irreplaceable opportunities, the School Defendants will suffer nothing from following the Free Exercise Clause's commands. They have a legal obligation to provide a publicly funded education to their students. 16 V.S.A. § 822. And fulfilling that obligation by sending students to Rice

---

[4] The School Defendants show no haste to accommodate Appellants' participation. While Appellants suffer irreparable harm, the School Defendants apparently cannot be bothered to call a special meeting to address the district court's January 7th order. They do, however, suggest that their online meetings are difficult to schedule because it is winter and the Coronavirus pandemic continues. Resp. 5. Yet, according to their website, Georgia's School Board conducted two special meetings since the district court issued its order, but it never readdressed the Rainvilles' or Foleys' requests. *See* https://www.fwsu.org/gems-board.

10

will actually save money. The Rainvilles' district, for example, will save thousands of dollars by paying C.R.'s tuition to Rice instead of her current school. *See* App'x at AA121–54 (Rice's tuition rate is $11,600, but sending towns regularly pay more than $15,000 for their students).

"Finally, the public interest is well served by the correction of this constitutional harm." *French I*, 2021 WL 137340, at *13. *See also Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("enforcement of an unconstitutional law is always contrary to the public interest."); *accord. N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013).

## Conclusion

A new semester starts Monday. Without relief from this Court, Appellants' irreparable harm will continue until at least the next school year. C.R. will miss out on a Rice education and E.R. may soon have to find a new school. Those losses cannot be undone. By refusing Appellants' immediate access, along with the tuition payment, to the Program, the School Defendants prolong Vermont's 21-year legacy of religious discrimination. Appellants need this Court to enter the requested injunction before it's too late.

Dated: January 22, 2021

                                      Respectfully submitted,

                                      *s/ David A. Cortman*
                                      David A. Cortman

GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

John J. Bursch
MI Bar No. P57679
Paul Daniel Schmitt
IN Bar No. 34765-49
ALLIANCE DEFENDING FREEDOM
440 First Street NW
Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
pschmitt@ADFlegal.org

Ryan J. Tucker
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rtucker@ADFlegal.org

Thomas E. McCormick
MCCORMICK, FITZPATRICK, KASPER, &
BURCHARD, P.C.
40 George St.
Burlington, VT 05402
(802) 863-3494
tem@mc-fitz.com

*Attorneys for Appellants*

## Certificate of Compliance

This motion complies with the type-volume limit set forth in Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 2,469 words.

This motion also complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 360 in 14-point Century Schoolbook type-style.

Dated: January 22, 2021

*s/ David A. Cortman*
David A. Cortman
Attorney for Appellants

## Certificate of Service

I hereby certify that on January 22, 2021, a copy of this Motion was filed electronically with the Clerk of the Second Circuit Court of Appeals. Service on counsel for all parties will be accomplished through the Court's electronic filing system.

*s/ David A. Cortman*
David A. Cortman
Attorney for Appellants
