# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**　　　**2. PLEASE TYPE OR PRINT.**　　　**3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption:<br><br>A.H. v. French | District Court or Agency:<br><br>**District of Vermont** | Judge:<br><br>**Reiss** |
|---|---|---|
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>**January 7, 2021** | District Court Docket No.:<br><br>**20-cv-151** |
| | Date the Notice of Appeal was Filed:<br><br>**January 15, 2021** | Is this a Cross Appeal?<br><br>Yes　　✓ No |

| **Attorney(s) for Appellant(s):**<br><br>✓ Plaintiff<br><br>Defendant | Counsel's Name:　　Address:　　　Telephone No.:　　　Fax No.:　　　E-mail:<br><br>David A. Cortman, 1000 Hurricane Shoals Road NE Suite D-1100, Lawrenceville GA 30043 \| Telephone No.: (770) 339-0774 \| Fax No.: (770) 339-6744 \| DCortman@ADFlegal.org |
|---|---|
| **Attorney(s) for Appellee(s):**<br><br>Plaintiff<br><br>✓ Defendant | Counsel's Name:　　Address:　　　Telephone No.:　　　Fax No.:　　　E-mail:<br><br>William Ellis, 271 South Union Street, Burlington, VT 05401<br>Tel. (802) 863-4531 \| Fax: (802) 863-1743 \| wellis@mcneilvt.com |

| Has Transcript Been Prepared?<br><br>Yes | Approx. Number of Transcript Pages:<br><br>95 | Number of Exhibits Appended to Transcript:<br><br>0 | Has this matter been before this Circuit previously?　　Yes　　✓ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:　　　Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A":* **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

*ADDENDUM "B":* **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| U.S. a party　　　　Diversity<br><br>✓ Federal question　　Other (specify):<br>(U.S. not a party)　　_____ | Final Decision　　　　Order Certified by District Judge (i.e.,<br>　　　　　　　　　　　　　Fed. R. Civ. P. 54(b))<br><br>✓ Interlocutory Decision<br>Appealable As of Right　　Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B:  DISTRICT  COURT DISPOSITION   (Check as many as apply)**

**1. Stage of Proceedings**

✓ Pre-trial
During trial
After trial

**2. Type of Judgment/Order Appealed**

Default judgment
Dismissal/FRCP 12(b)(1)
  lack of subj. matter juris.
Dismissal/FRCP 12(b)(6)
  failure to state a claim
Dismissal/28 U.S.C. § 1915(e)(2)
  frivolous complaint
Dismissal/28 U.S.C. § 1915(e)(2)
  other dismissal

Dismissal/other jurisdiction
Dismissal/merit
✓ Judgment / Decision of the Court
Summary judgment
Declaratory judgment
Jury verdict
Judgment NOV
Directed verdict
✓ Other (specify): Denial of Motion for Preliminary Injunction

**3. Relief**

Damages:
  Sought: $ _____
  Granted: $ _____
  Denied: $ _____

✓ Injunctions:
  ✓ Preliminary
  Permanent
  ✓ Denied

---

**PART C:  NATURE OF SUIT   (Check as many as apply)**

**1. Federal Statutes**

Antitrust
Bankruptcy
Banks/Banking
✓ Civil Rights
Commerce,
Energy
Commodities
Other (specify): _____

Communications
Consumer Protection
Copyright □ Patent
Trademark
Election
Soc. Security
Environmental

Freedom of Information Act
Immigration
Labor
OSHA
Securities
Tax

**2. Torts**

Admiralty/
  Maritime
Assault /
  Defamation
FELA
Products Liability
Other (Specify):

**3. Contracts**

Admiralty/
  Maritime
Arbitration
Commercial
Employment
Insurance
Negotiable
  instruments
Other Specify

**4. Prisoner Petitions**

Civil Rights
Habeas Corpus
Mandamus
Parole
Vacate Sentence
Other

**5. Other**

Forfeiture/Penalty
Real Property
Treaty (specify): _____
Other (specify): _____

**6. General**

Arbitration
Attorney Disqualification
Class Action
Counsel Fees
Shareholder Derivative
Transfer

**7.** Will appeal raise constitutional issue(s)?
✓ Yes     No

Will appeal raise a matter of first impression?
✓ Yes     No

---

1. Is any matter relative to this appeal still pending below?     Yes, specify: _____     ✓ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?          Yes     ✓ No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?     ✓ Yes     No

If yes, state whether   "A," or   'B,' or   both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: A.H. v French (formerly A.M. v. French) | Docket No. 20-1772 | Citation: 2021 WL 137340 | Court or Agency: U.S. Court of Appeals for the Second Circuit |
|---|---|---|---|

Name of Appellant:
**A.H., James Hester, Darlene Hester, Roman Catholic Diocese of Burlington, Vermont**

---

Date: **January 29, 2021**          Signature of Counsel of Record: **s/ David A. Cortman**

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1.   Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2.   File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3.   Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE:   IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.**  *SEE* LOCAL RULE 12.1.

# Addendum A

## (1) Description of the nature of the action

This appeal involves a straightforward case of government discrimination based on religion. Vermont's Town Tuition Program requires towns without public high schools to pay tuition for resident students to attend any public or approved private school that their parents choose. 16 V.S.A. § 822. But for more than 21 years, towns' school boards have relied on a Vermont Supreme Court decision interpreting the Vermont Constitution's Compelled Support Clause to deny funding for students who attend religious high schools. The school boards' denials follow consistent direction from Vermont's Agency of Education: religious schools cannot participate in Vermont's Program.

Appellants include four Catholic families who send their daughters to Rice Memorial High School, a ministry of Appellant Roman Catholic Diocese of Burlington, Vermont. The Hesters, Foleys, Rosses, and Rainvilles all live in towns without public high schools, so they should receive Program benefits. But three separate school boards denied the families' requests because Rice is a religious school. The school boards justified denying the families' requests by reasoning that the U.S. Supreme Court's opinions in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, and *Espinoza v. Montana Dep't of Rev.* did not apply to Vermont's constitution or the Program.

Appellants sued the Defendant-Appellee school boards, their school superintendents, and Vermont Education Secretary French last year to end this religious discrimination. They assert that the Appellees are violating their First Amendment free exercise rights and Fourteenth Amendment equal protection rights by excluding them from the Program solely due to their religious exercise. The Diocese additionally asserts that the Appellees violate its First Amendment free speech rights by excluding its schools from the Program. On November 25, 2020, Plaintiffs-Appellants moved for a preliminary injunction in the district court, asking the court to end Appellees' violation of their free exercise rights. The court heard oral argument on December 14, 2020.

**(2) The result below**

On January 7, 2021, U.S. District Judge Christina Reiss granted in part and denied in part Plaintiffs-Appellants' request for a preliminary injunction. The district court held that the school districts could not discriminate against Appellants because of Rice's religious status but determined that the *Espinoza* decision did not prohibit Appellees from engaging in "religious use" discrimination, so it could not order immediate participation in the program. The court also refused to issue Appellants' requested injunctive relief against Secretary French on the basis of standing. After the district court issued its order, the Appellees refused Appellants immediate access to the Program, citing a continued need to adhere to Vermont's state constitutional requirements that it not allow religious uses of the benefit.

**(3) Copies of the Notice of Appeal and Current Lower Court Docket Sheet**

Copies of the Notice of Appeal and current Lower Court Docket Sheet are attached.

**(4) Copies of All Relevant Opinions/Orders Forming the Basis for this Appeal**

A copy of the district court's Opinion and Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction is attached.

## Addendum B

## List of Issues to be Raised on Appeal and Applicable Standard(s) of Review

This case involves one legal question:

1. The First Amendment's Free Exercise Clause protects against laws that penalize religious activity by denying any person an equal share of rights, benefits, or privileges enjoyed by other citizens. Vermont's Town Tuition Program provides private school tuition payments for students who live in districts without a public high school. But the school districts wholly deny or seek to diminish the benefits available to students who choose to attend religious private high schools to prevent "religious uses" of the benefits. Does this unequal treatment violate the Free Exercise Clause?

The standard of review for this question is:

The Court reviews preliminary injunction denials for an abuse of discretion. *A.H. v. French*, No. 20-1772, 2021 WL 137340, at *5 (2d Cir. Jan. 15, 2021). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Id.* (quotation omitted). This Court reviews the district court's findings of historical fact for clear error and the core constitutional facts de novo. *Id.* at *2, n1.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

**A.H.**, by and through her parents and
natural guardians, James Hester and
Darlene Hester; **JAMES HESTER**,
individually; **DARLENE HESTER**,
individually; **E.R.**, by and through her
parents and natural guardians Chad
Ross and Angela Ross; **CHAD ROSS**,
individually; **ANGELA ROSS**,
individually; **A.F.**, by and through her
parents and natural guardians, Daniel
Foley and Juliane Foley; **DANIEL
FOLEY**, individually; **JULIANE FOLEY**,
individually; **C.R.**, by and through her
parents and natural guardians, Gilles
Rainville and Elke Rainville; **GILLES
RAINVILLE**, individually; **ELKE
RAINVILLE**, individually; and the
**ROMAN CATHOLIC DIOCESE OF
BURLINGTON, VERMONT,**

       *Plaintiffs,*

v.

**DANIEL M. FRENCH**, in his official
capacity as Secretary of the Vermont
Agency of Education; **MICHAEL CLARK**,
in his official capacity as Grand Isle
Supervisory Union Superintendent;
the **SOUTH HERO BOARD OF SCHOOL
DIRECTORS**; the **CHAMPLAIN ISLANDS
UNIFIED UNION SCHOOL DISTRICT
BOARD OF SCHOOL DIRECTORS**;
**JAMES TAGER**, in his official capacity
as Franklin West Supervisory Union
Superintendent; and the **GEORGIA
BOARD OF SCHOOL DIRECTORS**,

       *Defendants.*

Case No. 2:20-cv-151-cr

1

**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Pursuant to Fed. R. App. P. 3(c)(1) and 4(a), notice is hereby given that Plaintiffs A.H., Jim Hester, Darlene Hester, E.R., Chad Ross, Angela Ross, A.F., Daniel Foley, Juliane Foley, C.R., Gilles Rainville, Elke Rainville, and the Roman Catholic Diocese of Burlington, Vermont appeal to the United States Court of Appeals for the Second Circuit.

The above-named parties appeal from the Opinion and Order of the U.S. District Court for the District of Vermont granting in part and denying in part Plaintiffs' Motion for Preliminary Injunction that was entered on January 7, 2021 [Doc. 40].


Respectfully submitted this 15th day of January, 2021.


*s/ Thomas E. McCormick*

Thomas E. McCormick (VT Bar No. 837)
MCCORMICK, FITZPATRICK, KASPER &
BURCHARD, P.C.
40 George Street
Burlington, VT 05402
Telephone: (802) 863-3494
Fax: (802) 865-9747
Email: tem@mc-fitz.com

Paul Daniel Schmitt* (IN Bar No.
34765-49)
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393-8690
Fax: (202) 347-3622
Email: PSchmitt@ADFlegal.org

Ryan Tucker* (AZ Bar No. 034382)
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: 480-444-0020
Fax: 480-444-0028
Email: RTucker@ADFlegal.org

David A. Cortman (GA Bar No.
188810)
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE,
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
Email: DCortman@ADFlegal.org

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties.

Dated this 15th day of January, 2021, by:

*s/ Tom McCormick*

Thomas E. McCormick (VT Bar No. 837)
MCCORMICK, FITZPATRICK, KASPER &
BURCHARD, P.C.
40 George St.
Burlington, VT 05402
Telephone: (802) 863-3494
Fax: (802) 865-9747
Email: tem@mc-fitz.com

*Counsel for Plaintiffs*

# U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:20-cv-00151-cr

A.H. et al v. French et al
Assigned to: Judge Christina Reiss
Demand: $22,000
Cause: 42:1983 Civil Rights Act

Date Filed: 09/28/2020
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**A.H.**
*by and through her parents and natural
guardians, James Hester and Darlene
Hester*
*other*
Darlene Hester
*other*
James Hester

represented by **David A. Cortman , Esq.**
Alliance Defense Fund
1000 Hurrican Shoals Rd NE, Suite D1000
Lawrenceville, GA 30043
(770) 339-0774
Fax: (770) 339-6744
Email:
dcortman@alliancedefendingfreedom.org
*ATTORNEY TO BE NOTICED*

**Paul D. Schmitt , Esq.**
Alliance Defending Freedom
440 First Street, NW, Suite 600
Washington, DC 20001
(202) 393-8690
Fax: (202) 347-3622
Email: pschmitt@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
(480) 444-0020
Fax: (480) 444-0028
Email: rtucker@ADFlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
McCormick, Fitzpatrick, Kasper &
Burchard, P.C.
40 George Street
P.O. Box 638
Burlington, VT 05402-0638
(802) 863-3494
Fax: (802) 865-9747
Email: tem@mc-fitz.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **James Hester**<br>*individually* | represented by | **David A. Cortman , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Paul D. Schmitt , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Ryan J. Tucker , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Thomas E. McCormick , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Darlene Hester**<br>*individually* | represented by | **David A. Cortman , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Paul D. Schmitt , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Ryan J. Tucker , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Thomas E. McCormick , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Roman Catholic Diocese of Burlington, Vermont** | represented by | **David A. Cortman , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Paul D. Schmitt , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Ryan J. Tucker , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

Case 21-87, Document 5, 01/29/2021, 3026101, Page11 of 39

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gilles Rainville**
*individually*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul D. Schmitt , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chad Ross**
*Individually*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul D. Schmitt , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**C.R.**
*by and through her parents and natural
guardians, Gilles Rainville and Elke
Rainville*
*other*
Gilles Rainville
*other*
Elke Rainville

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul D. Schmitt , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Angela Ross**                    represented by  **David A. Cortman , Esq.**
*Individually*                                  (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Paul D. Schmitt , Esq.**
                                               (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Ryan J. Tucker , Esq.**
                                               (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Thomas E. McCormick , Esq.**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Juliane Foley**                   represented by  **David A. Cortman , Esq.**
*individually*                                  (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Paul D. Schmitt , Esq.**
                                               (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Ryan J. Tucker , Esq.**
                                               (See above for address)
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Thomas E. McCormick , Esq.**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Foley**                    represented by  **David A. Cortman , Esq.**
*individually*                                  (See above for address)
                                               *ATTORNEY TO BE NOTICED*

                                               **Paul D. Schmitt , Esq.**
                                               (See above for address)

Case 21-87, Document 5, 01/29/2021, 3026101, Page13 of 39

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**E.R.**                                          represented by   **David A. Cortman , Esq.**
*by and through her parents and natural*                          (See above for address)
*guardians, Chad Ross and Angela Ross*                            *ATTORNEY TO BE NOTICED*
*other*
Chad Ross                                                         **Paul D. Schmitt , Esq.**
*other*                                                           (See above for address)
Angela Ross                                                       *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Ryan J. Tucker , Esq.**
                                                                  (See above for address)
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Thomas E. McCormick , Esq.**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**A.F.**                                          represented by   **David A. Cortman , Esq.**
*by and through her parents and natural*                          (See above for address)
*guardians, Daniel Foley and Juliane Foley*                       *ATTORNEY TO BE NOTICED*
*other*
Daniel Foley                                                      **Paul D. Schmitt , Esq.**
*other*                                                           (See above for address)
Juliane Foley                                                     *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Ryan J. Tucker , Esq.**
                                                                  (See above for address)
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Thomas E. McCormick , Esq.**
                                                                  (See above for address)
                                                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elke Gilles**                                   represented by   **David A. Cortman , Esq.**
*individually*                                                    (See above for address)

ATTORNEY TO BE NOTICED

**Paul D. Schmitt , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas E. McCormick , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.
<u>**Defendant**</u>

**Daniel M. French**                        represented by    **Jon T. Alexander , Esq.**
*in his official capacity as Secretary of the*                    Office of the Vermont Attorney General
*Vermont Agency of Education*                          Civil Division
                                                      109 State Street
                                                      Montpelier, VT 05609-1001
                                                      (802) 828-1299
                                                      Email: jon.alexander@vermont.gov
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Rachel E. Smith , Esq.**
                                                      Vermont Attorney General's Office
                                                      Agency of Education
                                                      1 National Life Drive, Davis 5
                                                      Montpelier, VT 05602
                                                      (802) 595-9655
                                                      Fax: (802) 828-6430
                                                      Email: rachel.e.smith@vermont.gov
                                                      *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Michael Clark**                            represented by    **William F. Ellis**
*in his official capacity as Grand Isle*                          McNeil, Leddy & Sheahan, P.C.
*Supervisory Union Superintendent*                          271 South Union Street
                                                      Burlington, VT 05401
                                                      (802) 863-4531
                                                      Fax: (802) 863-1743
                                                      Email: wellis@mcneilvt.com
                                                      *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**South Hero Board of School Directors**       represented by    **William F. Ellis**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Champlain Islands Unified Union School District Board of School Directors** | represented by | **William F. Ellis** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **James Tager** *in his official capacity as Franklin West Supervisory Union Superintendant* | represented by | **William F. Ellis** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Georgia Board of School Directors** | represented by | **William F. Ellis** (See above for address) *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/28/2020 | 1 | VERIFIED COMPLAINT against Michael Clark, Daniel M. French, South Hero Board of School Directors filed by A.H., Darlene Hester, Roman Catholic Diocese of Burlington, Vermont, James Hester.Summonses issued. (Attachments: # 1 Civil Cover Sheet) (esb) (Entered: 09/29/2020) |
| 09/28/2020 | 2 | MOTION for Admission Pro Hac Vice of Paul Daniel Schmitt filed by A.H., Darlene Hester, James Hester, Roman Catholic Diocese of Burlington, Vermont. (Attachments: # 1 Affidavit of Paul Daniel Schmitt, # 2 Certificate of Good Standing)(law) (Entered: 09/29/2020) |
| 09/29/2020 | 3 | MOTION for Admission Pro Hac Vice of Ryan J. Tucker filed by A.H., Darlene Hester, James Hester, Roman Catholic Diocese of Burlington, Vermont. (Attachments: # 1 Affidavit of Ryan J. Tucker, # 2 Certificate of Good Standing)(law) (Entered: 09/29/2020) |
| 09/29/2020 | 4 | ORDER granting 2 MOTION for Admission Pro Hac Vice of Paul Daniel Schmitt and granting 3 MOTION for Admission Pro Hac Vice of Ryan J. Tucker. Signed by Chief Judge Geoffrey W. Crawford on 9/29/2020. (This is a text-only Order.) (jal) (Entered: 09/29/2020) |
| 10/07/2020 | 5 | SUMMONS RETURNED Executed. Daniel M. French served on 10/2/2020, answer due 10/23/2020.(Schmitt, Paul) (Entered: 10/07/2020) |
| 10/07/2020 | 6 | SUMMONS RETURNED Executed. South Hero Board of School Directors served on 10/1/2020, answer due 10/22/2020.(Schmitt, Paul) (Entered: 10/07/2020) |
| 10/07/2020 | 7 | SUMMONS RETURNED Executed. Michael Clark served on 10/1/2020, answer due 10/22/2020.(Schmitt, Paul) (Entered: 10/07/2020) |
| 10/16/2020 | 8 | NOTICE OF APPEARANCE by Jon T. Alexander, Esq on behalf of Daniel M. French. (Alexander, Jon) (Entered: 10/16/2020) |
| 10/19/2020 | 9 | NOTICE OF APPEARANCE by Rachel E. Smith, Esq on behalf of Daniel M. French. (Smith, Rachel) (Entered: 10/19/2020) |
| 10/20/2020 | 10 | STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint filed by Daniel M. French.(Alexander, Jon) Motion relief removed, text clarified on 10/21/2020 (jlh). (Entered: 10/20/2020) |
| 10/20/2020 | 11 | NOTICE OF APPEARANCE by William F. Ellis on behalf of Michael Clark and South |

| | | Hero Board of School Directors. (Attachments: # 1 Certificate of Service)(Ellis, William) Filer added on 10/20/2020 (jlh). (Entered: 10/20/2020) |
|---|---|---|
| 10/21/2020 | 12 | ORDER granting 10 MOTION for Extension of Time to Answer re 1 Complaint. All Defendants answers due November 12, 2020. Signed by Chief Judge Geoffrey W. Crawford on 10/21/2020. (This is a text-only Order.) (jal) (Entered: 10/21/2020) |
| 11/02/2020 | 13 | ORDER REASSIGNING CASE. Case reassigned to Judge Christina Reiss for all further proceedings. Chief Judge Geoffrey W. Crawford no longer assigned to case. Signed by Chief Judge Geoffrey W. Crawford on 11/2/2020. (law) (Entered: 11/09/2020) |
| 11/11/2020 | 14 | Entry removed from the docket. (Entered: 11/12/2020) |
| 11/12/2020 | 15 | NOTICE OF DOCKET ENTRY REMOVAL: Document 14 has been removed from the docket in accordance with the court's Administrative Procedures. (law) (Entered: 11/12/2020) |
| 11/12/2020 | 16 | FIRST AMENDED VERIFIED COMPLAINT against Michael Clark, Daniel M. French, South Hero Board of School Directors, Champlain Islands Unified Union School District Board of School Directors, James Tager, Georgia Board of School Directors filed by Darlene Hester, A.H., Roman Catholic Diocese of Burlington, Vermont, James Hester, Gilles Rainville, Chad Ross, C.R., Angela Ross, Juliane Foley, Daniel Foley, E.R., A.F., Elke Gilles. (Attachments: # 1 Amended Complaint (red-lined version))(kp) (Entered: 11/12/2020) |
| 11/12/2020 | | ISSUED Summons as to Champlain Islands Unified Union School District Board of School Directors, Georgia Board of School Directors, James Tager.(law) (Entered: 11/13/2020) |
| 11/13/2020 | 17 | CERTIFICATE OF SERVICE by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross re 16 Amended Complaint,.(McCormick, Thomas) (Entered: 11/13/2020) |
| 11/24/2020 | 18 | SUMMONS RETURNED Executed. Champlain Islands Unified Union School District Board of School Directors served on 11/13/2020, answer due 12/4/2020.(McCormick, Thomas) (Entered: 11/24/2020) |
| 11/24/2020 | 19 | SUMMONS RETURNED Executed. James Tager served on 11/13/2020, answer due 12/4/2020.(McCormick, Thomas) (Entered: 11/24/2020) |
| 11/24/2020 | 20 | SUMMONS RETURNED Executed. Georgia Board of School Directors served on 11/13/2020, answer due 12/4/2020.(McCormick, Thomas) (Entered: 11/24/2020) |
| 11/25/2020 | 21 | MOTION for Preliminary Injunction filed by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (Attachments: # 1 Memorandum in Support, # 2 Index of Exhibits, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Declaration of Angela Ross, # 13 Declaration of Elke Rainville, # 14 Declaration of James Hester, # 15 Declaration of Lisa Lorenz, # 16 Declaration of Juliane Foley) (McCormick, Thomas) (Attachment 7 replaced on 11/25/2020) (jlh). (Attachment 9 replaced on 11/25/2020) (jlh). (Entered: 11/25/2020) |
| 11/25/2020 | 22 | NOTICE OF DOCKET ENTRY CORRECTION re: 21 MOTION for Preliminary Injunction filed by Angela Ross, A.F., A.H., Gilles Rainville, Elke Gilles, Daniel Foley, Roman Catholic Diocese of Burlington, Vermont, James Hester, Chad Ross, C.R., Darlene Hester, Juliane Foley, E.R. Exhibits E and G have been replaced to correct illegible pdf |

| | | headers. The corrected documents are now attached to [21] as well as this entry. (Attachments: # [1] Exhibit G) (jlh) (Entered: 11/25/2020) |
|---|---|---|
| 11/27/2020 | [23] | MOTION to Dismiss Case for Lack of Jurisdiction filed by Daniel M. French.(Smith, Rachel) (Entered: 11/27/2020) |
| 11/27/2020 | [24] | ANSWER to [16] Amended Complaint by Champlain Islands Unified Union School District Board of School Directors, Michael Clark, Georgia Board of School Directors, South Hero Board of School Directors, James Tager.(Ellis, William) (Entered: 11/27/2020) |
| 11/27/2020 | [25] | AMENDED NOTICE OF APPEARANCE by William F. Ellis on behalf of Champlain Islands Unified Union School District Board of School Directors, Michael Clark, Georgia Board of School Directors, South Hero Board of School Directors, James Tager. (Attachments: # [1] Certificate of Service)(Ellis, William) (Entered: 11/27/2020) |
| 11/30/2020 | [26] | NOTICE of Hearing re: [21] MOTION for Preliminary Injunction. Motion Hearing set for 12/14/2020 at 01:00 PM, via video conference, in Burlington Courtroom 510 before Judge Christina Reiss.(jbr) (Entered: 11/30/2020) |
| 12/01/2020 | [27] | NOTICE OF APPEARANCE by David A. Cortman, Esq on behalf of A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (Cortman, David) (Entered: 12/01/2020) |
| 12/09/2020 | [28] | RESPONSE in Opposition re [21] MOTION for Preliminary Injunction filed by Champlain Islands Unified Union School District Board of School Directors, Michael Clark, Georgia Board of School Directors, South Hero Board of School Directors, James Tager. (Attachments: # [1] Certificate of Service)(Ellis, William) (Entered: 12/09/2020) |
| 12/09/2020 | [29] | RESPONSE in Opposition re [21] MOTION for Preliminary Injunction filed by Daniel M. French. (Attachments: # [1] Declaration of Daniel M. French, # [2] Declaration of Brad James, # [3] Exhibit 1, # [4] Exhibit 2)(Alexander, Jon) (Attachment 1 replaced on 12/10/2020) (jlh). (Attachment 2 replaced on 12/10/2020) (jlh). (Attachment 3 replaced on 12/10/2020) (jlh). (Attachment 4 replaced on 12/10/2020) (jlh). (Entered: 12/09/2020) |
| 12/10/2020 | [30] | NOTICE OF DOCKET ENTRY CORRECTION re: [29] Response in Opposition to [21] MOTION for Preliminary Injunction. The attachments have been replaced to correct illegible PDF headers. The corrected documents are now attached to [29] as well as this entry. (Attachments: # [1] Declaration of Brad James, # [2] Exhibit 1, # [3] Exhibit 2) (jlh) (Entered: 12/10/2020) |
| 12/13/2020 | [31] | REPLY to Response to [21] MOTION for Preliminary Injunction filed by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (McCormick, Thomas) (Entered: 12/13/2020) |
| 12/14/2020 | 32 | MINUTE ENTRY for proceedings held before Judge Christina Reiss: Motion Hearing held on 12/14/2020 re [21] MOTION for Preliminary Injunction. Present via video conference for plaintff: Paul Schmitt, Esq., Ryan Tucker, Esq., and Thomas McCormick, Esq. Present via video conference for hte defendant: Jon Alexander, AAG, Rachel Smith, AAG, and William Ellis, Esq. Court makes inquiries. Statements by counsel. Dft request court to take Judicial Notice of the Rice Memorial High School Website. Court declines and orders dft to put in a request for Judicial Notice of the website. ORDERED: dft to file request for Judicial Notice of Rice Memorial High School Website by 12/15/2020. Pltf to respond to request for Judicial Notice. Court will take motion under advisement after Judicial Notice submission and Pltf response. (Court Reporter: Johanna Masse) (jbr) (Entered: 12/14/2020) |

| 12/15/2020 | [33](#) | REQUEST for Judicial Notice by Champlain Islands Unified Union School District Board of School Directors, Michael Clark, Georgia Board of School Directors, South Hero Board of School Directors, James Tager. (Attachments: # [1](#) Exhibit A, # [2](#) Certificate of Service) (Ellis, William) Event/Text clarified on 12/15/2020 (jlh). (Entered: 12/15/2020) |
| 12/16/2020 | [34](#) | RESPONSE re [33](#) REQUEST for Judicial Notice by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (McCormick, Thomas) (Entered: 12/16/2020) |
| 12/16/2020 | [35](#) | ENTRY ORDER denying as moot [33](#) REQUEST for Judicial Notice. Parties are hereby GRANTED 5 days from the date of this Entry Order to file objections. Signed by Judge Christina Reiss on 12/16/2020. (kp) (Entered: 12/16/2020) |
| 12/21/2020 | [36](#) | RESPONSE re [35](#) Order on Motion for Miscellaneous Relief *Objection to Judicial Notice* by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (McCormick, Thomas) (Entered: 12/21/2020) |
| 12/21/2020 | [37](#) | RESPONSE re [35](#) Order on Motion for Miscellaneous Relief *in Support of Judicial Notice* by Daniel M. French. (Alexander, Jon) (Entered: 12/21/2020) |
| 12/28/2020 | [38](#) | RESPONSE in Opposition re [23](#) MOTION to Dismiss Case for Lack of Jurisdiction filed by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (McCormick, Thomas) (Entered: 12/28/2020) |
| 01/06/2021 | [39](#) | RESPONSE in Support re [33](#) REQUEST for Judicial Notice filed by Champlain Islands Unified Union School District Board of School Directors, Michael Clark, Georgia Board of School Directors, South Hero Board of School Directors, James Tager. (Attachments: # [1](#) Certificate of Service)(Ellis, William) (Entered: 01/06/2021) |
| 01/07/2021 | [40](#) | OPINION AND ORDER granting in part and denying in part [21](#) Motion for Preliminary Injunction. Signed by Judge Christina Reiss on 1/7/2021. (kp) (Entered: 01/07/2021) |
| 01/11/2021 | [41](#) | REPLY to Response to [23](#) MOTION to Dismiss Case for Lack of Jurisdiction filed by Daniel M. French. (Smith, Rachel) (Entered: 01/11/2021) |
| 01/15/2021 | [42](#) | NOTICE OF INTERLOCUTORY APPEAL as to [40](#) Opinion and Order on Motion for Preliminary Injunction by A.F., A.H., C.R., E.R., Daniel Foley, Juliane Foley, Elke Gilles, Darlene Hester, James Hester, Gilles Rainville, Roman Catholic Diocese of Burlington, Vermont, Angela Ross, Chad Ross. (McCormick, Thomas) (Entered: 01/15/2021) |
| 01/15/2021 | 43 | USCA Appeal Fees received $ 505.00 receipt number 4682023721 re [42](#) Notice of Interlocutory Appeal, filed by Angela Ross, A.F., A.H., Gilles Rainville, Elke Gilles, Daniel Foley, Roman Catholic Diocese of Burlington, Vermont, James Hester, Chad Ross, C.R., Darlene Hester, Juliane Foley, E.R. (gmg) (Entered: 01/15/2021) |
| 01/19/2021 | [44](#) | TRANSCRIPT filed for hearing date of 12/14/2020: Motion for Preliminary Injunction before Judge Christina Reiss as to [42](#) Notice of Interlocutory Appeal. Court Reporter/Transcriber Johanna Masse, telephone number 802-951-8102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 2/12/2021. Redacted Transcript Deadline set for 2/22/2021. Release of Transcript Restriction set for 4/22/2021. (jbr) (Entered: 01/19/2021) |
| 01/20/2021 | [45](#) | TRANSMITTED Index on Appeal Circuit No. 21-87 re: [42](#) Notice of Interlocutory Appeal. (gmg) (Entered: 01/20/2021) |

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 JAN -7 PM 3: 24

BY_____
DEPUTY CLERK

A.H., by and through her parents and natural          )
guardians, James Hester and Darlene Hester;           )
JAMES HESTER, individually; DARLENE HESTER, )
individually; E.R., by and through her parents and    )
natural guardians, Chad Ross and Angela Ross;         )
CHAD ROSS, individually; ANGELA ROSS,                 )
individually; A.F., by and through her parents and    )
natural guardians, Daniel Foley and Juliane Foley;    )
DANIEL FOLEY, individually; JULIANE FOLEY,            )
individually; C.R., by and through her parents and    )
natural guardians, Gilles Rainville and Elke Rainville; )
GILLES RAINVILLE, individually; ELKE                  )
RAINVILLE, individually; and the ROMAN                )
CATHOLIC DIOCESE OF BURLINGTON,                       )
VERMONT,                                              )
                                                      )
        Plaintiffs,                                   )
                                                      )
            v.                                        )       Case No. 2:20-cv-151
                                                      )
DANIEL M. FRENCH, in his official capacity            )
as Secretary of the Vermont Agency of Education;      )
MICHAEL CLARK, in his official capacity as Grand      )
Isle Supervisory Union Superintendent; the SOUTH      )
HERO BOARD OF SCHOOL DIRECTORS; the                   )
CHAMPLAIN ISLAND UNIFIED SCHOOL                       )
DISTRICT BOARD OF SCHOOL DIRECTORS;                   )
JAMES TAGER, in his official capacity as Franklin     )
West Supervisory Union Superintendent; and the        )
GEORGIA BOARD OF SCHOOL DIRECTORS,                    )
                                                      )
        Defendants.                                   )

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**
(Doc. 21)

Minor plaintiff A.H., her parents James and Darlene Hester, minor plaintiff E.R., her parents Chad and Angela Ross, minor plaintiff A.F., her parents Daniel and Juliane Foley, minor plaintiff C.R., her parents Gilles and Elke Rainville, and the Roman Catholic Diocese of Burlington, Vermont (the "Diocese of Burlington") (collectively, "Plaintiffs") bring this action against Defendants Daniel M. French ("Defendant French") in his official capacity as Secretary of the Vermont Agency of Education ("AOE"), Michael Clark in his official capacity as Superintendent of the Grand Isle Supervisory Union School District ("GISUSD"), the South Hero Board of School Directors, the Champlain Islands Unified Union School District ("CIUUSD") Board of Directors, James Tager in his official capacity as Franklin West Supervisory Union Superintendent, and the Georgia Board of School Directors (collectively, the "School Defendants").[1] In their First Amended Verified Complaint, Plaintiffs allege three claims: a violation of Plaintiffs' Free Exercise of Religion rights by all Plaintiffs against all Defendants (Count I); a claim by the Diocese of Burlington that Defendants violated its First Amendment right to Freedom of Expression (Count II); and a claim by all Plaintiffs against all Defendants for violation of Plaintiffs' constitutional right to Equal Protection (Count III). In their prayer for relief, Plaintiffs seek declaratory and injunctive relief, as well as an award of compensatory damages, attorney's fees, and costs.

In their motion for a preliminary injunction, Plaintiffs allege Defendants denied their applications for funds from the State of Vermont's statutory program (the "Town Tuition Program") solely because of the religious affiliation of Rice Memorial High School ("RMHS"). They ask the court:

> to enjoin Defendants, Defendants' officers, agents, employees, and all other persons acting in concert with them, from applying Vermont law, including the Vermont Constitution's Compelled Support Clause, Vt. Const. Ch. I, art. III—or any interpretation thereof—to deprive the Plaintiff families of access to town tuition benefits under Title 16 of the Vermont Statutes, and

---

[1] In *A.M. v. French*, the plaintiffs did not bring claims against the school districts that denied tuition payments for a dual enrollment program at RMHS. Here, in contrast, Plaintiffs bring claims directly against the School Defendants who denied their tuition reimbursement requests.

the Catholic Diocese of Burlington from receiving such benefits in
violation of the First Amendment's Free Exercise Clause.

(Doc. 21 at 3.)

On December 9, 2020, Defendants opposed the motion, and on December 13,
2020, Plaintiffs replied. The court heard oral argument on December 14, 2020 and
admitted as evidence the parties' declarations and exhibits. Neither party sought to
present testimony. Pursuant to Fed. R. Evid. 201, the School Defendants made an
unopposed request for judicial notice of certain excerpts from the RMHS website. The
court took judicial notice of the RMHS website and the 2019-2020 Course Viewbook in
their entirety.

Defendant French agrees that neither Vermont's Constitution nor *Chittenden Town
School District v. Department of Education*, 738 A.2d 539 (Vt. 1999) precludes payments
under the Town Tuition Program to religiously affiliated schools. He contends that he
neither denied Plaintiffs' tuition reimbursement requests nor had any role in the decision-
making. Instead, pursuant to Vermont's statutory framework, he contends that decision
was made solely by the School Defendants.

The School Defendants, in turn, argue that they followed the advice of legal
counsel in denying reimbursement payments for RMHS. They assert that "[i]t appears the
protected right these Plaintiffs seek to have vindicated is the right to a religious education
at public expense." (Doc. 28 at 6.) They claim no such right exists. In the alternative, they
contend that any injury Plaintiffs have suffered can be remedied by an award of damages
because Plaintiffs continue to practice their religion.

Plaintiffs are represented by David A. Cortman, Esq., Paul D. Schmitt, Esq., Ryan
J. Tucker, Esq., and Thomas E. McCormick, Esq. Defendant French is represented by
Assistant Attorneys General Jon T. Alexander and Rachel E. Smith, and the remaining
Defendants are represented by William F. Ellis, Esq.

I.  **Vermont's Constitution, the Town Tuition Program, and *Chittenden Town*
    and its Progeny.**

Before rendering its findings of fact, the court examines the constitutional and
statutory framework surrounding Plaintiffs' claims.

3

Vermont's Constitution provides:

> That all persons have a natural and unalienable right, to worship Almighty God, according to the dictates of their own consciences and understandings, as in their opinion shall be regulated by the word of God; *and that no person ought to, or of right can be compelled to attend any religious worship, or erect or support any place of worship, or maintain any minister, contrary to the dictates of conscience[.]*

Vt. Const. ch. I, art. 3 (emphasis supplied). The latter clause is commonly referred to as the "Compelled Support Clause."

Vermont statutes create a Town Tuition Program that provides tuition to students who live in towns without public schools so that those students can obtain a publicly funded education. Under Vermont law,

> (1) A school district may both maintain a high school and furnish high school education by paying tuition:
>
> > (A)   to a public school as in the judgment of the school board may best serve the interests of the students; or
> >
> > (B)   to an approved independent school or an independent school meeting education quality standards if the school board judges that a student has unique educational needs that cannot be served within the district or at a nearby public school.
>
> (2) *The judgment of the [school] board shall be final in regard to the institution the students may attend at public cost.*

16 V.S.A § 822(c) (emphasis supplied).

The Vermont Board of Education determines which schools are "approved independent schools":

> To become an approved independent school, the school must: (1) offer elementary or secondary education; (2) provide a prescribed minimum course of study; and (3) "substantially" comply with Vermont Board of Education rules for approved independent schools. 16 V.S.A. § 166(b). The rules must at a minimum require "that the school has the resources required to meet its stated objectives, including financial capacity, faculty who are qualified by training and experience in the areas in which they are assigned, and physical facilities and special services that are in accordance with any state or federal law or regulation." *Id.*

*Chittenden Town*, 738 A.2d at 545.

4

The Vermont Supreme Court has described the Town Tuition Program as "quite simple." *Id.* at 544. If a town school district "provides elementary education, it is required to provide secondary education." *Id.* (citing 16 V.S.A. § 822(a)). A town "has a number of options in meeting this obligation. The two main ones are to maintain a public high school or to pay tuition 'to an approved public or independent high school, to be selected by the parents or guardians of the pupil, within or without the state.'" *Id.* (quoting 16 V.S.A. § 822(a)-(b)). "Neither the [Town Tuition Program] nor the rules deal with sectarian education[]" and "neither the statute nor the rules deal with the religious part of the curriculum of a sectarian school." *Id.* at 545. There is thus "no limit on the quantity and nature of sectarian subjects[]" nor is there any requirement that "sectarian education be separated from secular education. It is [therefore] entirely possible that the majority of the education in an approved independent school will be in religious tenets and doctrine." *Id.*

In *Chittenden Town*, the Vermont Supreme Court "consider[ed] the constitutional implications of the [Town Tuition Program] authorizing school districts to provide high school education to their students by paying tuition for nonpublic schools selected by their parents." *Chittenden Town*, 738 A.2d at 541 (citing 16 V.S.A. §§ 822, 824). Having concluded in a prior case that "the Establishment Clause of the United States Constitution was not an impediment to the reimbursement at public expense of tuition paid to a sectarian school[,]" the Vermont Supreme Court addressed only "whether the tuition reimbursement scheme transgresses the Compelled Support Clause of the Vermont Constitution, Vt. Const. ch. I, art. 3, which speaks not to establishment of religion but to state support of religious worship." *Id.*

Holding "that a school district violates Chapter I, Article 3 [of Vermont's Constitution] when it reimburses tuition for a sectarian school under [16 V.S.A.] § 822 in the absence of adequate safeguards against the use of such funds for religious worship[,]" *id.* at 541-42, the Vermont Supreme Court observed that "Article 3 is not offended . . . unless the compelled support is for the 'worship' itself." *Id.* at 550. As a result, the constitutional defect to be remedied in Vermont's Town Tuition Program is the absence

5

of "restrictions that prevent the use of public money to fund religious education." *Id.* at 562 (observing the court saw "no way to separate religious instruction from religious worship").

To the extent that *Chittenden Town* may be misread as precluding all payments of public funds to religious schools, the Vermont Supreme Court specifically disavowed that interpretation:

> Because we have concluded that Chittenden's tuition payments to religious schools violate Article 3, [the Compelled Support Clause,] we must address plaintiff's additional contention that such an outcome violates the Free Exercise Clause of the First Amendment. It plainly does not. *The Free Exercise argument is premised on plaintiff's assumption that we would conclude that children who attend religious schools may not receive public educational funding, while children who attend public schools may. This is not our ruling. We have determined only that public funds may not pay for religious worship within the meaning of Article 3, wherever it occurs.*

*Id.* at 563 (emphasis supplied).

The Vermont Supreme Court acknowledged that "adequate safeguards" and "appropriate restrictions[]" could render publicly funded tuition payments to religious schools constitutionally permissible. *Chittenden Town*, 738 A.2d at 542, 564. It has cautioned that *Chittenden Town* is a "narrow ruling" whose "most critical lesson . . . is that the fact that the recipient of government support is a religious organization is not itself determinative[;] . . . whether the funds are used to support religious worship is the critical question." *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 23, 205 Vt. 586, 597-98, 178 A.3d 313, 320 (observing that *Chittenden Town* does not prevent "children who attend religious schools" from "receiv[ing] public educational funding"). The Vermont Supreme Court has recognized that there are "myriad ways that a public school district can subsidize education in a religious school[.]" *Chittenden Town*, 738 A.2d at 562.

## II.     Findings of Fact.

The court makes the following factual findings by a preponderance of the evidence:

1.     The minor Plaintiffs and their parents live in school districts that permit them to participate in the Town Tuition Program.

6

2.  RMHS is an approved independent school recognized by the Vermont State
    Board of Education and the AOE. It "is a Roman Catholic school that exists
    to guide its students toward the realization of their God-given potential."
    (Doc. 21-15 at 2, ¶ 6.) RMHS's tuition rate of approximately $11,600 per
    year is more affordable than the tuition of many other approved
    independent schools participating in the Town Tuition Program. As
    Plaintiffs point out, the affordability of RMHS supports a conclusion that
    the School Defendants' denial of tuition reimbursement was not motivated
    by financial concerns.

3.  RMHS is owned and operated by Plaintiff Diocese of Burlington, which
    exercises its religion by operating RMHS as a "ministry" "which provides
    academic instruction that is faithful to the teachings of the Catholic
    Church." *Id.* at ¶¶ 4-5.

4.  The minor Plaintiffs' desire to attend RMHS is an exercise of their own and
    their parents' religious faith.

5.  The School Defendants have denied tuition payments for the minor
    Plaintiffs' attendance at RMHS solely because of that school's religious
    affiliation. For example,

    a.  When the Hesters requested tuition reimbursement from GISUSD
        for A.H., they were denied because "Rice is a religious school for
        which [GISUSD] do[es] not pay tuition." (Doc. 21-3 at 2.) In
        denying the request, GISUSD relied on its attorney's advice and
        information contained on the website of EdChoice, a nonprofit
        organization, which stated that under Vermont's Town Tuition
        Program, "[t]he sending town pays school tuition directly to the
        receiving school, which can be any public or private, *non-religious*
        school in or outside Vermont." *Id.* (emphasis in original) (internal
        quotation marks omitted).

    b.  In response to the Rosses' application for Town Tuition Program
        funds for E.R.'s attendance at RMHS, Defendant Clark stated that
        "[t]he reason your request for the CIUUSD to pay tuition at [RMHS
        was denied] is the Vermont Constitution bars public payments to
        religious institutions." *Id.* at 9. Defendant Clark stated it "is
        considered state support for religion" and cited a legal opinion from
        the CIUUSD's attorney that purportedly supported that conclusion.
        *Id.*

    c.  According to the Rainville family, C.R.'s education at Bellows Free
        Academy is currently funded through the Town Tuition Program.
        The Georgia Board of School Directors denied C.R.'s tuition
        reimbursement request for RMHS because it "is a religious school."

(Doc. 21-13 at 3.)

    d.    A.F., who currently attends RMHS, was denied a tuition reimbursement by GISUSD because RMHS "is a religious school." (Doc. 21-16 at 3.)

6.    In denying RMHS tuition reimbursement requests for the minor Plaintiffs, the School Defendants did not ask RMHS how its religious worship activities are funded or whether tuition could be apportioned between secular and religious education.

7.    The Diocese of Burlington "covers the expenses of Masses held at [RMHS], which are the school's religious worship events." Plaintiffs contend that "only $200-$300 per year[]" is attributable to RMHS's chapel and its public Masses. (Doc. 21-15 at 4, ¶¶ 25-26.) It is not clear whether this amount covers utilities, heat, and cleaning. If so, it appears insufficient. Without a further explanation, the court cannot credit it.[2]

8.    Plaintiffs contend that "[s]tudent tuition does not fund [RMHS's] worship activities[]" and RMHS's "chaplains are not paid a salary from [RMHS]." *Id.* at ¶¶27-28. Plaintiffs do not address whether Plaintiff Diocese of Burlington pays for religious education courses at RMHS or whether that cost is covered by donations.

9.    The School Defendants claim that RMHS's website makes it clear that it would be difficult, if not impossible, to segregate religious education from secular courses at RMHS. They do not further claim they undertook that task.

10.    The RMHS website indicates that RMHS's faculty "strives to ensure each course meets [its] mission of inspiring students to love learning, serve others, and seek God."[3]

11.    RMHS's 2019-2020 Course Viewbook states that "[a]s a Roman Catholic school, [RMHS] exists to guide its students toward the realization of their God-given potential. [RMHS] teaches students to recognize and develop their gifts by inspiring them to love learning, to serve others and to seek God through Jesus Christ and his Church."[4]

---

[2] "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (internal quotation marks omitted). The court need not accept as true factual allegations that are unsupported by reliable, admissible evidence. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

[3] https://rmhsvt.org/course-offerings (last visited Dec. 16, 2020).

[4] https://d2y1pz2y630308.cloudfront.net/24848/documents/2019/12/viewbook.pdf (last visited

12. RMHS offers secular educational courses as well as courses offered by its "Religion Department" including "Scripture," "Catholic Faith and Sacraments," "Morality & Social Justice," "Catholicism Today," "Love and Life Choices," and "Art and Spirituality."[5]

13. Defendant French acknowledges that:

> *Chittenden* [*Town*] did <u>not</u> prohibit public funding of all "education [that] occurs in a religious school" and thus did not disapprove "the myriad ways that a public school district can subsidize education in a religious school by paying for expenses that occur whether or not the school was sectarian," such as "payments for school transportation to sectarian schools . . . text books used in sectarian schools . . . or teachers of secular subjects to sectarian school children." 738 A.2d at 562 (internal citations omitted).
>
> * * *
>
> In this way, *Chittenden* [*Town*] suggested, the religious school and sending district <u>can</u> safeguard against the risk that "the public and private sources of revenue are commingled so that each supports religious education." *Id.* This approach ensures that publicly funded tuition payments <u>can</u> be made to religious schools that "clearly cover[] only the cost of secular educational expenses" at the religious school, *id.* at 562, such as "education on secular subjects required in the state's minimum course of study," *id.* at 546, and which thereby comply with the Compelled Support Clause.

(Doc. 29 at 3-4) (emphasis and omissions in original).

14. From 2001 through 2019, at least thirty-five school districts have elected in at least eighty-two instances to pay tuition pursuant to the Town Tuition Program to twenty-two different independent high schools that have an apparent or declared religious affiliation. In 2018, only one of the 1,735 publicly funded students attended an approved independent school in Vermont. In 2016, out of 1,664 students, there were none.

15. Plaintiffs contend that Defendant French has provided inconsistent and

---

Dec. 16, 2020).

[5] The court agrees with Plaintiffs that RMHS's website and course offerings have limited relevance in determining the factual basis for the School Defendants' decision because there is no evidence that the School Defendants consulted these materials in denying Plaintiffs' tuition reimbursement requests. However, these materials remain relevant to the availability and scope of injunctive relief.

incorrect guidance regarding the import of *Chittenden Town*, including in an August 26, 2020 email in which his representative stated: "I checked with the [AOE's] legal team and was told there is no change in a district's ability to pay tuition to a parochial school. The Chittenden decision still stands. I trust this information answers your question." (Doc. 29-1 at 4.)

16. Plaintiffs further contend that Defendant French and the AOE have a history of providing incorrect guidance regarding the proper interpretation of *Chittenden Town* which has contributed to a violation of their Free Exercise rights.[6]

17. In their First Amended Verified Complaint, Plaintiffs allege that Defendant Tager consulted with "[Defendant] French of the [AOE]" before he urged the denial of the Rainvilles' and the Foleys' tuition requests. (Doc. 16 at 33, ¶¶ 301-02) (internal quotation marks omitted). Defendant French disputes this claim and avers that he "never withheld, or indicated that he would withhold, a district's State educational funding because the district paid tuition to a religious school." (Doc. 29 at 5) (citing Doc. 29-1 at 3, ¶ 7.) In the absence of an evidentiary hearing and a credibility determination, the court cannot resolve this dispute of fact.

18. Defendant French points out that, although Plaintiffs have collected emails of past instances of incorrect advice regarding the impact of *Chittenden Town*, not "a single one was ever sent to or received by any of the superintendent and school board member Defendants." (Doc. 29 at 7.) On this basis, he contends that there is "no specific evidence causally connecting AOE or Secretary French with the recent decisions [regarding

---

[6] *See, e.g.*, Doc. 21-10 at 2 (explaining in January 23, 2019 email that "schools that are approved to receive public tuition dollars from school districts . . . [as] an approved independent school . . . must be: 1) non-sectarian, and 2) maintain an accredited curriculum"); *id.* at 37 (August 9, 2013 email from AOE deputy secretary and chief financial officer informing school district official that "[s]ome approved independent schools are run by religious organizations. If the school is pervasively religious the Vermont Supreme Court has held that public funds cannot be used so districts would not be able to pay tuition to those schools."); *id.* at 24 (March 9, 2012 email in which AOE official announced "[t]here is no provision for public funds to be paid to schools with religious affiliations"); *id.* at 27 (December 27, 2010 email from AOE official to school district official stating "parents and students may choose any approved public high school or approved independent school, though not a religious school."); *id.* at 32 (Spring 2010 AOE summary of Vermont school choice options noting "school boards pay tuition to public or approved independent schools that parents choose, within or outside Vermont, not including religious schools"); Doc. 38 at 6 n.1 (quoting *State Regulation of Private Schools*, U.S. Dep't of Educ. at 282 (2009), *available at* https://perma.cc/8QU2-R5WF (thanking AOE's independent school consultant for confirming that "[r]eligious schools may not be designated by school districts and tuition charges cannot be paid to the religious school. *Chittenden Town School District v. Vermont Department of Education*, 738 A.2d 539 (Vt.1999).").

Plaintiffs' tuition reimbursement requests.]" *Id.*

19.    Neither Defendant French nor his representatives participated in the School Defendants' decision to deny Plaintiffs' requests for tuition reimbursement. There is also no evidence that the School Defendants sought guidance from Defendant French in making those determinations.

## III.    Conclusions of Law and Analysis.

In their pending motion, Plaintiffs ask the court to order Defendants to comply with applicable law and to refrain from depriving Plaintiffs of tuition reimbursement payments solely because of RMHS's religious affiliation. They do not ask the court to strike down the Compelled Support Clause or invalidate the Town Tuition Program. The court agrees with the parties that the Compelled Support Clause, as interpreted by *Chittenden Town*, does not conflict with the Free Exercise Clause, as interpreted by *Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246 (2020). Accordingly, at issue is only whether injunctive relief is warranted and whether it can be narrowly tailored to prevent an ongoing violation of Plaintiffs' Free Exercise rights.

### A.    Standard of Review.

A party seeking a preliminary injunction must "generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *A.C.L.U. v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). Although in some cases a "sufficiently serious question[] going to the merits of [a] claim" may suffice, a plaintiff cannot rely on the more lenient "serious questions" standard where he seeks to "challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme." *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (internal quotation marks and citation omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat.*

*Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citations and internal quotation marks omitted).

As a threshold issue, the court considers whether the injunctive relief sought is mandatory or prohibitory and whether it would grant the moving party all of its requested relief. As the Second Circuit has explained:

> [W]e have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.

> \* \* \*

> The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act. . . . [T]his distinction is important because we have held that a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief. The clear or substantial showing requirement—the variation in language does not reflect a variation in meaning—thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success.

> \* \* \*

> A heightened standard has also been applied where an injunction—whether or not mandatory—will provide the movant with substantially all the relief that is sought. . . . If the use of a heightened standard is to be justified, the term "all the relief to which a plaintiff may be entitled" must be supplemented by a further requirement that the effect of the order, once complied with, cannot be undone. A heightened standard can thus be justified when the issuance of an injunction will render a trial on the merits largely or partly meaningless[.]

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33-35 (2d Cir. 1995) (internal quotation marks and citations omitted).

In this case, Plaintiffs seek to enjoin Defendants from impermissibly interpreting Vermont law in a manner that deprives them of access to Town Tuition Program benefits. As such, their request for injunctive relief will not alter the status quo because it would only command Defendants to do what they are already required to do—comply with

applicable law. Cabined in this manner, Plaintiffs' request for injunctive relief is limited, narrow, and would not negate the need for a trial on the merits.

**B.    Whether Plaintiffs Have Established Irreparable Harm.**

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction[.]" *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983) (internal quotation marks omitted). Irreparable harm means "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (internal quotation marks omitted). There is also a "general proposition that irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." *Tom Doherty Assocs., Inc.*, 60 F.3d at 38.

If Plaintiffs prove their claim of religious discrimination, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[,]" *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and "denial of [a] plaintiff's right to the free exercise of his religious beliefs is a harm that cannot be adequately compensated monetarily." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, "[e]ven when a complaint alleges First Amendment injuries, . . . irreparable harm is not presumed and must still be shown." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

Plaintiffs' ability to establish irreparable harm turns on whether they can demonstrate that Defendants have impaired their Free Exercise rights by denying tuition reimbursement payments to RMHS. If Plaintiffs establish a likelihood of success on the merits, the essential requirement of irreparable harm will be satisfied. In other words, "[b]ecause the violation of a constitutional right is the irreparable harm asserted here, the two prongs of the preliminary injunction threshold merge into one: in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).

**C. Whether Plaintiffs Can Establish a Likelihood of Success on the Merits.**

**1. Plaintiffs' Free Exercise Claims Against Defendant French.**

Defendant French argues that Plaintiffs have failed to demonstrate a likelihood of success on the merits with regard to their claims against him because neither he nor the AOE caused their injuries. As he points out, under 16 V.S.A. § 828, it is the "decision of a school board" to determine "eligibility for tuition payments, the amount of tuition payable, or the school [a student] may attend[.]" While that decision is appealable to the State Board of Education, the statute makes no reference to the involvement of Defendant French or the AOE.

The Vermont Supreme Court has observed that:

> [a]lthough the relevant statutes allow school districts to pay tuition on behalf of a resident who is a student in any approved private school, the *districts* must determine whether such a payment violates the Establishment Clause. *This responsibility rests upon them*, and not the State Board, except as a matter of appellate review.

*Campbell v. Manchester Bd. of Sch. Dirs.*, 641 A.2d 352, 356 (Vt. 1994) (emphasis supplied). Similarly, this court has previously held that "Defendant [French] does not control the determinations made by local school districts regarding whether to fund an independent high school that is 'approved' by the State Board of Education pursuant to 16 V.S.A. § 166(b)." *A.M. v. French*, 2020 WL 2786446, at *4 (D. Vt. May 29, 2020).

Notwithstanding a statutory scheme that authorizes only school boards to decide whether to grant tuition requests under the Town Tuition Program, Plaintiffs assert that Defendant French and his predecessors have sown the confusion that has led to an infringement of their Free Exercise rights. They point out that despite ample opportunity and time in which to do so, the AOE has failed to provide authoritative guidance as to how adequate safeguards may be imposed to ensure that public funds are not used to fund religious worship. Defendant French contends that, even crediting these facts as true, they cannot establish standing if the decisions that caused Plaintiffs' injuries were made solely by the School Defendants.

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "A party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). "Thus, in order to seek injunctive relief, a plaintiff must show the three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).

Although standing is not available for an injury that is "the result of the independent action of some third party[,]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and alterations omitted), "[a] defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55-56 (2d Cir. 2016). Stated differently, "a plaintiff's injury need not be 'directly' attributable to a defendant in order to show the causation element of standing to sue that defendant, so long as the injury is 'fairly traceable' to that defendant." *Id.* at 59. At the pleading stage, this is not "an onerous standard" *id.* at 55 and is a "relatively modest" burden to meet. *Bennett v. Spear*, 520 U.S. 154, 171 (1997). However, "[w]hen a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" *Cacchillo*, 638 F.3d at 404 (quoting *Lujan v. Nat'l Wildlife Fed'n (Lujan I)*, 497 U.S. 871, 907 n.8 (1990)).

Under Vermont law, individual school boards decide whether Town Tuition Program funds will be paid to an approved independent school. *See* 16 V.S.A. § 822(c); *see also Campbell*, 641 A.2d at 356. Defendant French does not participate in these decisions and has no authority to override them. Standing is generally not found in such circumstances. *See, e.g., Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (finding that plaintiffs lacked standing to sue Florida's Secretary of State where "Florida law tasks the Supervisors, independently of the Secretary, with printing

15

the names of candidates on ballots in the order prescribed by the ballot statute"). Although in the past, the AOE may have provided incorrect or misleading guidance regarding *Chittenden Town*, there is no evidence that it did so in this case. There is also no evidence that "[Defendant French's] actions have had a determinative or coercive effect on" the School Defendants for purposes of Plaintiffs' tuition reimbursement requests. *Nat'l Council of La Raza v. Mukasey*, 283 F. App'x 848, 852 (2d Cir. 2008).

Plaintiffs' further argument that their injuries are caused by Defendant French because he is generally responsible for supervising the expenditure of funds for public schools under 16 V.S.A. § 212 is similarly unavailing. Plaintiffs provide no evidence that Defendant French used his general authority to cause the School Defendants to deny Plaintiffs' tuition reimbursement requests. *See Jacobson*, 974 F.3d at 1254 (holding that "[i]n the absence of any evidence that the Secretary controls ballot order, the [plaintiffs] likewise cannot rely on the Secretary's general election authority to establish traceability").

Finally, Plaintiffs' request for an injunction against Defendant French will not redress their harm. It is the School Defendants' determinations they challenge, and it is the School Defendants alone that have the authority to approve their RMHS tuition requests. Because Plaintiffs have not established their standing to bring claims against Defendant French in the context of a preliminary injunction, Plaintiffs' request to enjoin Defendant French must be DENIED.

## 2. Plaintiffs' Free Exercise Claims Against the School Defendants.

Plaintiffs claim that the School Defendants violated their constitutional right to the free exercise of their religion by denying their tuition reimbursement requests solely because of RMHS's religious affiliation. "The Free Exercise Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (citation omitted) (quoting U.S. Const. amend. I). It "protects religious observers against unequal treatment

and subjects to the strictest scrutiny laws that target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer* (*Trinity Lutheran*), 137 S. Ct. 2012, 2019 (2017) (alteration and internal quotation marks omitted). "Applying that basic principle, [the Supreme Court] has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion that can be justified only by a state interest of the highest order." *Id.* (internal quotation marks omitted). This includes any "automatic and absolute exclusion from the benefits of a public program for which [the plaintiff was] otherwise fully qualified." *Id.* at 2022.

In *Espinoza*, the Supreme Court struck down Montana Constitution's "no-aid" provision, which states:

> [t]he legislature, counties, cities, towns, school districts, and public corporations shall not make any direct or indirect appropriation or payment from any public fund or monies, or any grant of lands or other property for any sectarian purpose or to aid any church, school, academy, seminary, college, university, or other literary or scientific institution, controlled in whole or in part by any church, sect, or denomination[,]

Mont. Const., art. X, § 6(1). The Supreme Court determined that Montana's "no-aid" provision violated the Free Exercise Clause because it barred "religious schools from public benefits solely because of the religious character of the schools[]" and "plainly exclude[d] schools from government aid solely because of religious status[,]" a decision that "turn[ed] expressly on religious status and not religious use." *Espinoza*, 140 S. Ct. at 2255-56 (internal quotation marks omitted).

Unlike in *Espinoza*, where "[t]o be eligible for government aid under the Montana Constitution, a school must divorce itself from any religious control or affiliation[,]" *id.* at 2256, the Vermont Supreme Court's ruling in *Chittenden Town* left open the possibility of state funding of religious schools provided there were "adequate safeguards against the use of such funds for religious worship." 738 A.2d at 542. *Chittenden Town* thus does not *require* the School Defendants to refuse to reimburse tuition payments to RMHS. Quite the contrary, it affirmatively recognized that such payments may be harmonized with the

Compelled Support Clause provided certain restrictions are imposed. *See Taylor*, 2017
VT 92, at ¶ 23, 205 Vt. at 597, 178 A.3d at 320 (observing that *Chittenden Town* does not
"prevent[]" children who attend religious schools from "receiv[ing] public educational
funding.").

   After *Espinoza*, it is clear "that discrimination in handing out school aid based on
the recipient's affiliation with or control by a religious institution differ[s] from
discrimination in handing out that aid based on the religious use to which the recipient
would put it." *Carson v. Makin*, 979 F.3d 21, 38 (1st Cir. 2020).[7] Because *Chittenden
Town* prohibits only religious use, it does not conflict with *Espinoza*.

   The School Defendants denied tuition reimbursement payments to RMHS solely
because of its religious affiliation. In doing so, they did not ask how religious worship
and education are funded at RMHS. They also did not consider whether there were
adequate safeguards to ensure that public funds were not used to fund religious worship.
To the extent the School Defendants were motivated by a well-intentioned desire to avoid
a violation of Vermont's Compelled Support Clause, "[s]tatus-based discrimination
remains status based even if one of its goals or effects is preventing religious
organizations from putting aid to religious uses." *Espinoza*, 140 S. Ct. at 2256. It is
therefore not a defense to assert a concern that "[g]eneral school aid . . . could be used for
religious ends by some recipients, particularly schools that believe faith should
'permeate[]' everything they do." *Id.* (second alteration in original).

   "When otherwise eligible recipients are disqualified from a public benefit 'solely

---

[7] In *Carson v. Makin*, the First Circuit found Maine's statutory "nonsectarian" requirement
"imposes a use-based restriction[]" that "unlike the one at issue in *Espinoza*, does not bar schools
from receiving funding simply based on their religious identity" but rather "targets only the use
of the tuition assistance for sectarian instruction itself." *Carson v. Makin*, 979 F.3d 21, 37-38, 40,
44 n.11 (1st Cir. 2020). This type of provision is constitutionally permissible because it "neither
punishes a recipient solely for being controlled by or affiliated with a religious institution nor
imposes a penalty for doing religious things." *Id.* at 44 (internal quotation marks omitted).
Although "affiliation or association with a church or religious institution is one potential
indicator of a sectarian school, it is not dispositive. The Department's focus is on what the school
teaches through its curriculum and related activities, and how the material is presented." *Id.* at 38
(emphasis in original).

18

because of their religious character,' [the court] must apply strict scrutiny." *Id.* at 2260 (quoting *Trinity Lutheran*, 137 S. Ct. at 2021). To satisfy strict scrutiny, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (internal quotation marks omitted). A state's "policy preference for skating as far as possible from religious establishment concerns[]" is not a state interest "of the highest order" because "achieving greater separation of church and State than is already ensured under the Establishment Clause of the Federal Constitution . . . is limited by the Free Exercise Clause." *Trinity Lutheran*, 137 S. Ct. at 2024 (quoting *Widmar v. Vincent*, 454 U.S. 263, 276 (1981)).

Because the School Defendants' decisions "turn[ed] expressly on religious status and not religious use[,]" *Espinoza*, 140 S. Ct. at 2256, they "cut[] families off from otherwise available benefits [merely because] they choose a religious private school rather than a secular one, and for no other reason." *Id.* at 2261. The School Defendants' denial of Plaintiffs' tuition reimbursement requests thus does not survive strict scrutiny. Plaintiffs have therefore established a substantial likelihood that they will prevail on the merits of their Free Exercise claims against the School Defendants.

**D.      Whether the Balance of Hardships and the Public Interest Favor Injunctive Relief.**

"Where the [g]overnment is the opposing party, the final two factors in the [preliminary injunction] analysis—the balance of the equities and the public interest— merge." *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020). For this reason, a plaintiff "seek[ing] to enjoin the activity of a government agency[] . . . must contend with the well-established rule that the [g]overnment has traditionally been granted the widest latitude in the dispatch of its own internal affairs[.]" *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (internal quotation marks omitted).

Absent a preliminary injunction, Plaintiffs will continue to be deprived of their constitutionally protected right to the free exercise of their religion. While a court must tread with caution when asked to interfere in a municipal entity's fulfillment of its

statutory duties, the School Defendants have no legitimate interest in withholding a public benefit based on a misinterpretation of *Chittenden Town*. To the contrary, "securing First Amendment rights is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). An injunction prohibiting the School Defendants from denying tuition reimbursement payments to RMHS solely based on its religious affiliation is thus consistent with the public interest.

The scope of available injunctive relief, however, remains limited. This court cannot simply order the School Defendants to honor Plaintiffs' RMHS tuition requests. To do so would be to ignore ample evidence that at least some of the courses offered by RMHS consists of religious education. Nor can the court accept Plaintiffs' invitation to order that all tuition reimbursements be paid to them. Unlike in *Espinoza*, payments under the Town Tuition Program are not funds that make their "way to religious schools only as a result of [parents] independently choosing to spend their [tuition] at such schools." *Espinoza*, 140 S. Ct. at 2254. Instead, the Town Tuition Program grants only a sending school board decision-making authority. *See* 16 V.S.A. § 822(c)(2) ("The judgment of the [school] board shall be final in regard to the institution the students may attend at public cost."). As the Vermont Supreme Court has observed:

> [T]he United States Supreme Court may well decide that the intervention of unfettered parental choice between the public funding source and the educational provider will eliminate any First Amendment objection to the flow of public money to sectarian education. We cannot conclude, however, that parental choice has the same effect with respect to Article 3. If choice is involved in the Article 3 equation, *it is the choice of those who are being required to support the religious education*, not the choice of the beneficiaries of the funding.

*Chittenden Town*, 738 A.2d at 563 (emphasis supplied). Parental choice therefore does not obviate Compelled Support Clause concerns.

The court would also overstep its authority if it fashioned "appropriate safeguards" on behalf of the School Defendants. It agrees with Plaintiffs that the court "should not . . . try to do Defendants' job for them." (Doc. 34 at 3); *see also Jacobson*, 974 F.3d at 1257 (ruling that it would "raise[] serious federalism concerns, and it is doubtful that a federal

20

court would have authority to order it[]" if it directed a state official to promulgate a rule or regulation to address a challenged statute).

Because a preliminary injunction is an extraordinary remedy, the court must narrowly tailor the relief granted to the harm likely to occur. In this case, that means the court must order the School Defendants to refrain from denying Plaintiffs' tuition reimbursement requests solely because of RMHS's religious affiliation, but it must tread no further in determining how the decision should be made.

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction against the School Defendants is GRANTED IN PART. (Doc. 21.)

## PRELIMINARY INJUNCTION

1.  During the pendency of this litigation and until a trial on the merits, unless otherwise ordered by the court, the School Defendants are hereby ENJOINED from denying Plaintiffs' applications for Town Tuition Program reimbursement solely on the basis of RMHS's religious status.

2.  This injunction binds the School Defendants as well as their officers, agents, servants, employees, and attorneys.

3.  The court determines that no security is necessary under Fed. R. Civ. P. 65(c) as the injunction is unlikely to cause the School Defendants to suffer costs and damages if they are wrongly enjoined.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of January, 2021.

Christina Reiss, District Judge
United States District Court